THE WACKENHUT CORPORATION y OTROS, demandantes y apelantes, *v.* HON. SALVADOR RODRÍGUEZ APONTE y OTROS, demandados y apelados.

*Número*: O-70-81      *Resuelto*: 23 de marzo de 1972

*Rodríguez Maduro & Torres Vilá,* abogados de The William J. Burns International Detective Agency, Inc. y William Martorani Masbernat; *Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de los apelados.

PER CURIAM: En 29 de junio de 1965 se aprobó la Ley de Detectives Privados de Puerto Rico, Ley Núm. 108 de esa fecha, 25 L.P.R.A. sec. 285 y ss., Suplemento, cuyo propósito según se desprende de su título es "Reglamentar la profesión de detective privado, las agencias de detectives privados y las agencias de seguridad para la protección de empresas privadas, las escuelas para la enseñanza de detectives privados y fijar penalidades por las violaciones a esta ley."

Wackenhut Corporation, Marvil International Security Services, Inc., y William J. Burns International Detectives Agencies, Inc., son corporaciones que se dedican a proveer mediante paga guardianes a las empresas privadas y también prestan servicios de investigación. Marvil además provee perros adiestrados para la custodia de propiedades. Robert S. Hopler es Gerente para Puerto Rico de Wackenhut Corporation.

Desde que comenzó a regir dicha ley de detectives privados los apelantes cabildearon tratando de obtener una serie de enmiendas a la misma. En vista de que no lograron sus propósitos Wackenhut y Marvil presentaron en el Tribunal de Distrito Federal, en San Juan, en 10 septiembre 1965, solicitudes de *injunction* temporero y de *injunction* permanente contra el Superintendente de la Policía de Puerto Rico y otros funcionarios puertorriqueños para prohibirles que les aplicasen las disposiciones de dicha Ley Núm. 108.

En su acción ante el Tribunal de Distrito Federal, Wack-

enhut y Marvil alegaron, en resumen, que la ley es inconstitucional por ser arbitraria al:

1. Incluir bajo la categoría de "detectives privados a dos clases de individuos distintos: los guardianes y los detectives.

2. Exigir un requisito idéntico—1,000 horas de estudios a los dos grupos de individuos antes mencionados.

3. Prohibir el uso de perros entrenados por los guardias a quienes se les exige licencia como detectives privados cuando no prohíbe el uso de dichos perros a los agentes del orden público ni a los guardianes empleados directamente por las empresas privadas para su protección.

4. Prohibir que los detectives privados y las agencias cubiertas por la ley presten servicios en casos que envuelvan conflictos obreros, o entre obreros y patronos, o en aquellos casos en donde se haya presentado una petición de elección, cuando no prohíbe el empleo de individuos sin licencia como guardianes en esos casos. ([1])

En 13 septiembre 1965 se celebró una vista ante el Juez de Distrito Federal William C. Mathes, quien, a tenor con lo dispuesto en 29 U.S.C. sec. 2284, convocó un Tribunal de Distrito de tres jueces para entender en el asunto. En 16 septiembre 1965, a petición de los querellantes, el Juez Mathes emitió una orden temporera prohibiendo a los demandados aplicar la citada Ley Núm. 108 a los querellantes. Dicha orden estaría en vigor hasta que el Tribunal de Distrito de tres jueces determinase otra cosa.

Se vio el caso ante el Tribunal de Distrito de tres jueces y éste, mediante su opinión emitida por voz del Juez de Circuito Maris, suspendió todos los procedimientos en dicho caso para darle una oportunidad a los Tribunales de Puerto Rico a que resolviesen sobre la constitucionalidad de la Ley Núm. 108. Dijo dicho Tribunal de tres Jueces:

---

([1]) Véase el resumen que de las alegaciones de los demandantes hizo el Tribunal de Distrito Federal en *Wackenhut Corp.* v. *Aponte*, 266 F.Supp. 401, a la pág. 403.

"Creemos que la doctrina de abstención es especialmente aplicable en este caso en que se trata de la interpretación y de la constitucionalidad de un estatuto del Estado Libre Asociado de Puerto Rico. La deferencia debida al status de Puerto Rico bajo su convenio con el Congreso de los Estados Unidos dicta que Puerto Rico debe tener la oportunidad de determinar a través de sus tribunales el ámbito de su propia legislación y de pasar juicio sobre esa legislación a la luz de su Constitución y de la Constitución de los Estados Unidos." [2]

La decisión del Tribunal de Distrito Federal de tres jueces fue confirmada por el Tribunal Supremo de los Estados Unidos en *Wackenhut Corporation et al.* v. *Aponte*, 386 U.S. 268 (1967). [3]

En vista de lo anterior Wackenhut y Marvil presentaron en el Tribunal Superior de Puerto Rico, Sala de San Juan, una Solicitud de Sentencia Declaratoria, para litigar sobre la constitucionalidad de la Ley Núm. 108. Posteriormente William J. Burns International Detectives Agencies, Inc., quien no había sido parte en la acción ante el Tribunal de Distrito Federal, presentó una moción de intervención en el Tribunal Superior de Puerto Rico y la misma fue declarada con lugar. El Tribunal Superior declaró con lugar una moción de entredicho provisional a favor de Burns, similar a la que el Tribunal de Distrito Federal había emitido a favor de Wackenhut y de Marvil. Estas órdenes de entredicho provisional quedaron en vigor hasta la resolución final de este caso.

Estando así las cosas la Asamblea Legislativa de Puerto Rico enmendó la Ley Núm. 108 de 1965 mediante la Ley Núm. 126 de 24 junio 1968. [4] Las enmiendas hechas son conside-

---

[2] *Wackenhut Corp.* v. *Aponte*, 266 F.Supp. 401, 405 (1966).

[3] Para una expresión reciente de la aplicación de la doctrina de abstención a Puerto Rico, véase *Fornaris* v. *Ridge Tool Co.*, 400 U.S. 41 (1970).

[4] La Ley de Detectives Privados que aparece en el Suplemento al Título 25 de L.P.R.A. contiene, desde luego, la Ley Núm. 108 de 1965 según fue enmendada por la Ley Núm. 126 de 1968.

rables en extensión y én contenido. Se enmendaron el título y 11 artículos de la ley anterior. A esto hemos de regresar más adelante.

El Tribunal Superior de Puerto Rico, Sala de San Juan, ante el cual se litigó la Solicitud de Sentencia Declaratoria, sostuvo la validez de la ley en todas sus partes, mediante su opinión de 12 septiembre 1969. De dicha decisión apelaron separadamente para ante este Tribunal Wackenhut y Burns. La apelación de Wackenhut fue desestimada por falta de jurisdicción, Recurso O-69-227. Una moción de Wackenhut para intervenir en la presente apelación fue declarada sin lugar por nosotros en 8 mayo 1970. Igualmente declaramos sin lugar la moción del Procurador General de Puerto Rico para que se desestimase la apelación de Burns. Los apelantes presentaron su alegato en este Tribunal en 15 mayo 1970.

Como en el señalamiento de errores y en la discusión de los mismos que aparece en el alegato de los apelantes, hay cierta repetición y algunas imbricaciones (*overlapping*), a los fines de hacer una discusión ordenada de los asuntos planteados, hemos hecho la siguiente organización de los mismos:

1. Si son inconstitucionalmente arbitrarias, caprichosas e irrazonables las disposiciones de la ley que:

(a) agrupan a guardianes con investigadores y los clasifican como detectives privados,

(b) prohíben a agencias y detectives privados prestar sus servicios en casos de disputas obreras,

(c) prohíben a agencias y detectives privados utilizar canes adiestrados en el desempeño de sus servicios,

(d) autorizan a revocar la licencia de una agencia cuando algún empleado suyo haya sido convicto de determinados delitos.

2. Si es contrario a los derechos constitucionales de la igual protección de las leyes y del debido proceso de ley que a guardianes empleados por Agencias de Seguridad se les impongan ciertos requisitos que no son impuestos a personas que trabajan de guardianes o serenos en su capacidad individual.

Examinaremos cada una de estas cuestiones en forma separada. Como la Ley Núm. 108 fue sustancialmente enmendada por la Ley Núm. 126 de 1968 y como la ley así enmendada es la que está en vigor tenemos que examinar todas esas cuestiones a la luz del texto vigente de la ley. Debido a las mencionadas enmiendas que la ley sufrió en el 1968 la situación ahora es distinta a la que existía en el 1965 y 1966 cuando Wackenhut y Marvil litigaron en la Corte de Distrito Federal.

■ Antes de entrar en la discusión de los puntos específicos que levanta el apelante, es conveniente mencionar siquiera las dos premisas mayores que gobiernan este caso. Una consiste en que no hay duda de que el Estado puede reglamentar los negocios que se dedican a prestar servicios de guardianes y la ocupación de detectives privados. Como se ha dicho, es un lugar común expresar que la función policial es una primordialmente gubernamental y que todo lo que le atañe puede ser reglamentado y supervisado por el Estado para evitar que dicha función se degenere o pervierta. *Lehon* v. *Atlanta*, 242 U.S. 53 (1916), 61 L.Ed. 145, 149. Más de 25 de los estados federados de la Unión reglamentan esas actividades. Véase *Regulation of Private Police*, 40 So. Cal. L. Rev. 540 (1967). Hemos podido examinar 16 de esas leyes estatales. (⁵)

La segunda premisa consiste en que la reglamentación de dichos negocios y de dicha ocupación—como toda reglamenta-

---

(⁵) En orden alfabético por estados: West's *Anno. (California) Bus. & Prof. Code*, sec. 7500 y ss.; *Connecticut General Statutes Anno.*, sec. 29-153 y ss.; 24 *Delaware Code Anno.*, sec. 1301 y ss.; *Florida Statutes Anno.*, sec. 493.01 y ss.; 38 *Smith-Hurd Illinois Anno. Stat.*, sec. 201-1 y ss.; Burn's *Indiana Statutes Anno.*, sec. 42-1207 y ss.; 5 *Annotated Code of Maryland*, Art. 56, sec. 75 y ss.; *Mass. General Laws Anno.*, Ch. 147, sec. 22 y ss.; *Michigan Compiled Laws Anno.*, sec. 338.821 y ss.; 45 *New Jersey Statutes Anno.*, sec. 45:19-8 y ss.; 10 *New Mexico Statutes Anno.*, sec. 67-33-1 y ss.; 19 McKinney's *Consolidated Laws of New York Anno.*, Art. 7, sec. 70 y ss.; *General Statutes of North Carolina*, Ch. 66, sec. 66-49.1 y ss.; 9 *North Dakota Century Code Anno.*, sec. 43-30-01 y ss.; 22 Purdon's *Penna. Statutes Anno.*, sec. 11 y ss.; 12B Vernon's *Civil Statutes of Texas Anno.*, Art. 4413 (29bb).

ción gubernamental—tiene que mantenerse dentro de los límites de la Constitución de Puerto Rico y de los de aquellas disposiciones de la Constitución de los Estados Unidos que rigen en Puerto Rico.

Veamos ahora los puntos levantados por el apelante.

1. (a) Denominar "detectives privados" a los guardianes. Es cierto que a los guardianes se les incluye en la definición que da la ley de detective privado. Pero esto de por sí no es inconstitucional. Nadie arguiría seriamente que un estatuto sería inconstitucional porque, por ejemplo, incluyese a los médicos y a las enfermeras bajo una sola definición (como por ejemplo, diciendo que son personas dedicadas a atender a los enfermos) siempre que los requisitos para ejercer cada una de dichas profesiones y su reglamentación guardase razonable relación con sus actividades respectivas.

Antes de la enmienda del año 1968, la ley exigía a los guardianes cumplir ciertos requisitos idénticos a los que les exigía a los detectives privados, notablemente haber aprobado un curso de un mínimo de 1,000 horas de estudio y de práctica. Pero la enmienda de 1968 varió eso y ahora el curso que se le exige a los guardianes es de solamente 4 semanas. Art. 4(B) de la Ley, 25 L.P.R.A. sec. 285c(B). La ley vigente exige los siguientes requisitos a los guardianes: Ser mayor de 21 años de edad, no haber sido convicto de delito grave o delito menos grave que implique depravación moral, tener excelente reputación moral, haber prestado fianza, haber pagado $2.00 de licencia, no ser ebrio habitual, ni desequilibrado mental ni haber sido convicto por drogas, suministrar sus huellas digitales, no ser empleado del gobierno y haber aprobado un curso de adiestramiento de 4 semanas.

■ Cuál era la situación antes de la enmienda de 1968 es cosa que no tenemos que decidir ahora, pero ciertamente ninguno de los requisitos que en la actualidad la ley exige a los guardianes es inconstitucionalmente irrazonable, arbitrario

o caprichoso, salvo lo dicho más adelante en el párrafo (d) de esta opinión sobre el requisito de no haber sido convicto de delito menos grave que implique depravación moral.

(b)   Se atacan las disposiciones de la ley que prohíben a los detectives privados y a las agencias cubiertas por la ley prestar servicios en casos que envuelven conflictos entre obreros, o entre obreros y patronos o en aquellos casos en donde se haya presentado una petición de elección. Art. 20 de la Ley, 25 L.P.R.A. sec. 285s.

Los males que el Art. 20 desea evitar son bien conocidos entre los que han seguido la historia de los conflictos obrero-patronales. Véase la nota *Industrial Policing and Espionage*, en 52 Harv. L. Rev. 793. La intervención o presencia de una fuerza privada de guardianes provista por una agencia de seguridad en el ambiente tenso que usualmente prevalece en los conflictos laborales constituye un elemento potencial de violencia. El ejercicio de vigilancia y custodia, siempre, pero especialmente durante momentos de tensión como lo son los conflictos obrero-patronales, es parte de la función policial del estado. Es natural que las partes envueltas en esos conflictos sean de ordinario menos irritadas por la presencia de la policía gubernamental que de una policía privada. A la policía gubernamental se le puede presumir imparcialidad. Los obreros no pueden presumirle esa imparcialidad a una policía privada pagada por el patrono. Además, el patrono y la agencia privada que provee los guardianes no sienten las inhibiciones o disuasivos en su conducta que normalmente sienten los agentes, empleados y funcionarios públicos.

■   Lo que el legislador ha preferido es que en esos momentos de tensión producidos por los conflictos obreros, en los cuales una imprudencia puede desencadenar pasiones que produzcan tragedias humanas, sea la policía pública y no la privada la encargada de velar por el orden. Esa preferencia es una que cae dentro del ámbito de la política pública (*public policy*) que compete al Poder Legislativo ejercer.

El propósito del Art. 20 de la ley surge con claridad del debate legislativo que tuvo lugar en el año 1960 cuando se discutió una enmienda al P. de la C. 433, proyecto que tenía un título igual a la Ley Núm. 108. Se debatía en aquella ocasión sobre la necesidad de incorporar a la legislación una disposición como la del Art. 20. El Representante Aponte expresó en aquella ocasión lo siguiente:

"Lo que razonaba la Comisión al formular esta enmienda, es que pudiere utilizarse una fuerza de detectives o una fuerza de guardianes, fuerza uniformada, fuerza que impresiona, organizada, preparada—preparada para las contigencias que usualmente son atribuíbles a una fuerza policíaca—para ser utilizada contra una organización obrera por un patrono. He ahí por qué la enmienda que ofreció la Comisión prohíbe la intervención de este tipo de actividad en conflictos entre obreros o entre obreros y patronos."—13 *Diario de Sesiones* 1060.

El historial legislativo nos demuestra que el propósito del legislador fue impedir que al surgir un conflicto laboral el patrono contrate los servicios de guardianes de una agencia de seguridad. No es el propósito del Art. 20 prohibir que al surgir un conflicto laboral el patrono continúe utilizando los servicios de guardianes que venía utilizando en funciones normales de vigilancia. El propio artículo expresa que lo que se prohíbe es que se presten esos servicios "en casos que envuelvan conflictos entre obreros, o entre obreros y patronos, o en aquellos casos en donde se haya radicado una petición de elección." El Art. 20 no es una prohibición absoluta contra el empleo de guardianes, sino que se limita a las situaciones especiales que su texto comprende. Dicho artículo no prohíbe que el patrono continúe utilizando los guardianes que ha venido utilizando normalmente para la custodia de su propiedad. La preocupación del legislador que evidencia dicho Art. 20 es una preocupación legítima del Poder Legislativo y no encontramos que la haya plasmado en una forma arbitraria, caprichosa e irrazonable. La legislación de varios estados

demuestra que otras asambleas legislativas estatales también se han preocupado por este problema. Nueva York y Pennsylvania han adoptado medidas iguales a la de Puerto Rico. 19 McKinney's *Consolidated Laws of New York Anno.*, sec. 84; 22 Purdon's *Pennsylvania Statutes Anno.*, sec. 26.

(c) La prohibición del uso de perros adiestrados. Art. 19 de la Ley, 25 L.P.R.A. sec. 285r. La única agencia de guardianes que suministraba perros adiestrados era Marvil y no tenemos ante nosotros apelación alguna suya. Sólo tenemos ante nos la apelación de Burns. Burns no alega que utiliza ni que suministra perros adiestrados en el curso de sus funciones. Por lo tanto, el apelante no tiene ningún título o derecho legal que pudiera ser afectado por la confirmación o por la revocación de la sentencia apelada y por consiguiente carece de capacidad jurídica (*standing*) para solicitarnos que se revise este extremo. *Tugwell* v. *Barreto*, 65 D.P.R. 500, 508 (1945); *Cortés* v. *Rivera*, 41 D.P.R. 298, 302 (1930). La sentencia declaratoria se limita a los derechos realmente afectados por el estatuto en cuestión y como hemos visto la prohibición de utilizar perros no afecta al apelante, quien ni alegó ni probó que los utilizase.

Sin embargo, creemos que es útil expresar que en relación con la prohibición de uso de perros adiestrados que contiene el Art. 19 de la ley, 25 L.P.R.A. sec. 285r, bien puede comprenderse la razón que tuvo el legislador para establecer esta prohibición. Como se sabe, los perros adiestrados que utilizan las Agencias de Seguridad son perros de gran tamaño, temibles y rara es la persona que no se siente intimidada ante ellos. Es natural que esos perros intimiden a los obreros aún en funciones legítimas, tales como caminar en piquetes, celebrar mítines cerca del lugar del trabajo, etc. Este poder de intimidación es mayor entre las mujeres obreras. Es de conocimiento general que gran parte de la industria puertorriqueña, por ser industria de ropa, emplea mujeres. Pero aun entre obreros varones la situación que

hemos apuntado puede darse. El mal señalado es uno que el legislador bien puede prevenir.

■ (d) Revocación de licencia a una agencia cuando algún empleado suyo ha sido convicto de delito público. Art. 17(c) de la Ley, 25 L.P.R.A. sec. 285p(c). Este señalamiento no tenemos que resolverlo ahora porque en este pleito no se alega que se le haya revocado la licencia a ninguna agencia porque algún empleado suyo haya sido convicto de delito público. El propósito del Art. 17 es que las personas que posean licencias de detectives privados y los guardianes de las agencias de seguridad sean personas de buena conducta, que no sean felones, que no sean personas dadas a cometer delitos, atropellos y abusos pues personas de esas tendencias en cualquier fuerza policial—pública o privada—son una amenaza para la seguridad y la tranquilidad de todos.

Entendemos que el propósito del estatuto es permitir que se revoque una licencia o que se deniegue su renovación cuando el miembro o empleado de la agencia ha cometido un delito actuando bajo las órdenes o con el consentimiento expreso o tácito de los oficiales o directores de la agencia. En este contexto utilizamos la palabra oficiales incluyendo no solamente a los oficiales tradicionales de una corporación (presidente, tesorero, secretario, etc.) sino incluyendo también aquellos ejecutivos y jefes, de oficina o de campo, que ejercen autoridad sobre los empleados o miembros de una agencia de seguridad. Así también procede la revocación o denegación de renovación de licencias a detectives privados y otras personas que tengan licencia en su capacidad individual cuando ellos cometan delito público.

Aparentemente la ley de Illinois limita la sanción (revocación de licencia, etc.) a cuando el que ha cometido el delito es una persona que posee la licencia o es un socio de una sociedad o es un oficial de una corporación de las dedicadas a estas actividades de policía. 38 *Smith-Hurd Illinois Anno. Statutes*, sec. 201-16(c). Igualmente lo hace la ley de North Dakota.

9 *North Dakota Century Code Anno.*, sec. 43-30-12. Por el contrario, la ley de Florida contiene una disposición igual a la nuestra. 15B *Florida Statutes Anno.*, sec. 493.14 (c).

■ 2. La ley impone a los guardianes empleados por Agencias de Seguridad ciertos requisitos que no le son impuestos a personas que trabajan de guardianes (*watchmen*) o serenos (*night watchmen*) en su capacidad individual. El Art. 31 de la ley, 25 L.P.R.A. sec. 286c, dispone en su segundo párrafo que no serán aplicables las disposiciones de la ley a los serenos o guardianes que se dediquen a tales oficios en su carácter individual.

■ No hay duda pues de que la Asamblea Legislativa ha clasificado los guardianes en dos clases. Una comprende a los que son empleados o miembros de las Agencias de Seguridad que la Ley Núm. 108 reglamenta y la otra clase la compone los guardianes o serenos que quedan fuera de la ley en virtud de su Art. 31. Sin embargo, esta clasificación no es una que repugna a la conciencia por estar basada en prejuicios o motivaciones ilegítimos o por ser injusta. Al considerar a las personas que trabajan como guardianes o serenos en su capacidad individual como una clase de guardianes distinta a la de los guardianes que son empleados de Agencias de Seguridad, la Legislatura ha reconocido una realidad de nuestro medio social y económico. Una cosa es el empleado que forma parte del cuerpo de guardianes de una Agencia de Seguridad, uniformado, entrenado, motorizado, posiblemente armado y capaz de actuar en grupos y otra cosa es el antiguo guardián o sereno, mucho más antiguo que nuestra incipiente industrialización, que opera sin uniforme, usualmente desarmado y en forma individual. Los problemas de orden público que este último pueda crear son los problemas que cualquier ciudadano puede crear; no así los que pueden crear los guardianes empleados por las agencias profesionales de seguridad. Véase 52 Harv. L. Rev. 793.

Además, cuando el Poder Legislativo ataca un aspecto de un problema no viene obligado a atacarlos todos de una vez. Basta que la acción del Estado tenga una base racional y esté libre de discrímenes maliciosos. *Dandridge* v. *Williams*, 397 U.S. 471, 486–487.

En la reglamentación socio-económica no se viola la cláusula de la igual protección de las leyes meramente porque las clasificaciones estatutarias sean imperfectas. Para bregar con los problemas prácticos de gobierno a veces es necesario hacer clasificaciones aunque las líneas de demarcación sean algo crudas y esas determinaciones legislativas no se anularán si las situaciones fácticas lo justifican. *Dandridge* v. *Williams*, supra, pág. 485. La clasificación que aquí ha hecho la Asamblea Legislativa cae dentro de lo constitucionalmente permisible. (6)

Por el contrario, hay áreas en las cuales, por su tangencia con la dignidad humana y con el principio de que todo el mundo es igual ante la ley, toda clasificación es inherentemente sospechosa y está sujeta al más minucioso examen judicial. Estas áreas incluyen las clasificaciones o discrímenes por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas y nacionalidad. *Constitución de Puerto Rico*, Sec. 1, Art. II; *Graham* v. *Richardson*, 403 U.S. 365, 371–372 (1971).

Hemos pasado juicio sobre los errores señalados a la luz de la ley vigente, luego de las enmiendas del año 1968. La constitucionalidad de las partes de la Ley Núm. 108 de 1965 que ya

---

(6) Por lo menos once estados tienen disposiciones similares a la nuestra. Excluyen de la reglamentación a las personas que prestan sus servicios como guardianes o serenos en su capacidad individual. 38 *Smith-Hurd Illinois Anno. Stat.*, sec. 201-1; *New Jersey Stat. Anno*, 45:19-9(a); 21 Purdon's *Penn. Stat. Anno.*, sec. 25; *Mass. Gen. Laws Anno.*, Ch. 147, sec. 23(3); *Michigan Comp. Laws Anno.*, sec. 338.824; 10 *New Mexico Stat. Anno.*, 67-33-10(A); 5 *Anno. Code of Maryland*, Art. 56, sec. 75(a); Vernon's *Texas Civil Stat. Anno.*, Art. 4413(29bb), sec. 14; 24 *Delaware Code Anno.*, sec. 1301(a); *Gen. Stat. of North Carolina*, 66-49.2(2)(d); West's *Anno. California Codes, Bus. & Prof. Code*, sec. 7522(a).

532

no están en vigor por haber sido enmendadas por la Ley Núm. 126 de 1968 es un problema ahora académico.

*Se dictará sentencia de conformidad con lo anterior.*

El Juez Presidente, Señor Negrón Fernández, y los Jueces Asociados, Señores Hernández Matos, Ramírez Bages y Martín, no intervinieron.