**ADA ÁNGELES LEÓN ROSARIO**, como madre con patria potestad sobre su hija menor **CARMEN B. LEÓN**, demandante y recurrente, *v.* **ÁNGEL LUIS TORRES**, demandado y recurrido.

*Número:* R-78-122 *Resuelto:* 22 de mayo de 1980

806

*William Núñez Colón*, de Servicios Legales de Puerto Rico, Inc., abogado de la recurrente; el recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

¿Pueden nuestros tribunales requerir de un funcionario de un estado de Estados Unidos que haga constar en su registro demográfico la filiación paterna de una niña nacida e inscrita allá, hija de padres puertorriqueños? En su defecto, ¿procede la inscripción del nacimiento de la niña aquí? Confirmamos en este recurso sentencia del Tribunal Superior, Sala de Bayamón, que resolvió ambas cuestiones en la negativa. No se violó con ello las disposiciones de nuestra Constitución sobre discrimen por razón de nacimiento y sobre igual protección de las leyes.

I

Ada Ángeles León Rosario, aquí recurrente, instó demanda de filiación contra el aquí recurrido Ángel Luis Torres, en interés de una niña a que dio a luz en la ciudad de Boston, estado de Massachusetts, el 17 de enero de 1975. No hay controversia entre las partes en cuanto a las alegaciones y los hechos. Los padres de la niña, ambos puertorriqueños, convivieron maritalmente por espacio de cuatro meses en Guaynabo, donde fijaron su residencia. Al cabo de ese breve término se separaron. Ella quedó embarazada y se trasladó temporeramente a Boston, donde dio a luz a la niña, siendo inscrita en el correspondiente registro de nacimientos. No se hizo constar el nombre del padre. Éste viajó a Boston para reconocer a la niña y que se le hiciera figurar como su padre

en el mencionado registro, pero no le fue concedido. Las leyes del estado de Massachusetts no permitían entonces que se indicara el nombre del padre a menos que éste se casara con la madre.

La niña y sus padres están domiciliados en Puerto Rico. El padre ha continuado dándole la consideración de hija y contribuyendo a su sustento con una pensión semanal. Ésta es la situación al presentarse la demanda.

Al declararse con lugar la demanda de filiación, se declaró sin jurisdicción el tribunal para ordenar la inserción del nombre del demandado como padre de la niña en el acta de su nacimiento obrante en Boston, y concluyó, además, el tribunal que no procede su inscripción en el Registro Demográfico de su domicilio en Puerto Rico. A petición de la demandante, expedimos auto de revisión. Plantea, además, el recurso que debió disponerse en la sentencia una pensión alimenticia para la niña. Examinaremos las tres cuestiones separadamente.

## II

En cuanto a la primera cuestión, cabe señalar como nota introductoria que, no obstante haber nacido la niña en el estado de Massachusetts, su filiación se determina con arreglo a nuestras leyes. Art. 9, Código Civil, 31 L.P.R.A. sec. 9. Véanse *Martínez* v. *Vda. de Martínez*, 88 D.P.R. 443, 450–452 (1962) y *Lebrón Cruz* v. *Sucn. Yapor Elías*, 90 D.P.R. 266, 270–273 (1964). Además, el nacimiento de la niña en Massachusetts fue un mero accidente. Tanto por la ciudadanía ([1]) de la madre como por el domicilio de la niña, ésta es ciudadana del Estado Libre Asociado de Puerto Rico. La decisión de nuestros tribunales en cuanto determinan la filiación de la niña no tiene más alcance, sin embargo, que el reconocimiento del hecho de la filiación más los derechos, obligaciones y demás efectos legales que tal hecho implica de acuerdo con nuestras leyes. Carecemos de autoridad para obligar a un

([1]) Usamos el término "ciudadanía" en el contexto de nuestra relación con los Estados Unidos de América y no en el sentido internacional. Véase el Art. 5a de la Ley de Relaciones Federales. 1 L.P.R.A., Vol. 1 (ed. 1965), pág. 198.

funcionario de un estado de la Unión norteamericana para que realice un acto oficial regulado por las leyes de dicho estado.

La recurrente plantea que es aplicable la cláusula sobre entera fe y crédito de la Constitución federal, Art. IV, Sec. 1. No es éste el foro para hacer ese planteamiento puesto que no nos confrontamos con una decisión judicial de otro estado que deba hacerse cumplir aquí o cuyo acatamiento deba surtir algún efecto aquí. (²)

## III

Veamos el segundo aspecto del planteamiento de la recurrente, esto es, si procede ordenar que se inscriba en Puerto Rico el nacimiento de la niña.

■ La Ley del Registro Demográfico de Puerto Rico, 24 L.P.R.A. sec. 1041 y ss., crea un Registro General Demográfico, establecido en la División de Registro Demográfico o Estadísticas Vitales del Departamento de Salud de Puerto Rico, que "tendrá a su cargo todo lo concerniente a la *inscripción de nacimientos*, casamientos y defunciones *que ocurran* o se celebren *en Puerto Rico*". Art. 3 de dicha ley, 24 L.P.R.A. sec. 1071. (Énfasis suplido.) Más adelante, en su Art. 31, 24 L.P.R.A. sec. 1231, repite la ley la misma disposición limitativa al prescribir: "el Secretario de Salud preparará, hará imprimir y facilitará a los encargados de registros todos los libros, impresos y formas que han de usarse para *inscribir los nacimientos*, casamientos y defunciones *que ocurran o se celebren en el Estado Libre Asociado de Puerto Rico*, o que fueren necesarios para llevar a cabo los propósitos de esta Ley, . . .". (Énfasis nuestro.)

(²) Para la fecha del nacimiento de la niña el estatuto de Massachusetts sobre inscripción de nacimientos expresamente prohibía que en casos como el de autos se hiciera constar el nombre y circunstancias del padre. Dicho estatuto fue enmendado por Ley Núm. 5 de mayo de 1977 para permitirlo, como excepción, si ambos padres lo solicitan por escrito. Dice ahora: ". . . *In the record of birth of an illegitimate child, the name of and other facts relating to the father shall not be recorded except on the written request of both father and mother.*" Massachusetts General Laws Annotated, T. 5A, Cap. 46, sec. 1, suplemento para 1979. La enmienda de 1977 consistió en eliminar el punto que había después de "*recorded*" y adicionar desde "*except*" en adelante.

Cuando el Legislador ha querido permitir que se inscriban en el Registro Demográfico acontecimientos ocurridos fuera de Puerto Rico, lo ha indicado expresamente y con claridad en dicha Ley. Así, ha dispuesto para la inscripción de defunciones ocurridas en un barco o avión en travesía, o en el caso de ausentes, 24 L.P.R.A. sec. 1001; la inscripción de nacimientos ocurridos en un barco o avión durante su travesía, 24 L.P.R.A. sec. 1131; la anotación de divorcios o anulaciones de matrimonios decretados fuera de Puerto Rico, de personas cuyos matrimonios se hubieren celebrado en Puerto Rico, 24 L.P.R.A. sec. 1168; y la inscripción de adopciones realizadas fuera de Puerto Rico de personas nacidas aquí, y las realizadas aquí de personas nacidas fuera, 24 L.P.R.A. secs. 1138 y 1139. Para este último caso la ley ha establecido un registro especial, 24 L.P.R.A. sec. 1139.

El Reglamento del Registro Demográfico sigue las pautas establecidas por la ley, en términos aún más específicos y restrictivos. A tales fines dispone:

"En el Registro Demográfico de Puerto Rico y en los registros locales deberán ser inscritos:

(1) Los nacimientos ocurridos en el Estado Libre Asociado de Puerto Rico.

. . . . . . ." 24 R.&R.P.R. sec. 1071–1.

"Podrán ser inscritos a petición de los interesados:

(1) Los nacimientos ocurridos en el mar si los padres o alguno de ellos fuere residente del Estado Libre Asociado de Puerto Rico.

. . . . . . ." 24 R.&R.P.R. sec. 1071–2.

"Se anotarán también, tanto en el registro general como en los registros locales:

(1) . . . . . . . .

(2) Las adopciones

(3) . . . . . . . .

(4) . . . . . . ." 24 R.&R.P.R. sec. 1071–3.

Al enmendarse por la Ley Núm. 1 de 23 de febrero de 1978 varios artículos de la ley del Registro Demográfico relativos al registro de muertes y nacimientos que ocurran en barcos y aviones mientras se encuentren navegando y a la inscripción de muertes en casos de ausentes, específicamente hizo constar

el legislador en la exposición de motivos de dicha ley su propósito de "[evitar] en gran medida el fraude de registrar nacimientos que no han ocurrido en Puerto Rico". Véase Servicio Legislativo de Puerto Rico, Vol. 16, Núm. 1, pág. 3.

■ Ante tan tajante expresión de la intención legislativa, y las claras disposiciones de la Ley y del Reglamento a que hemos hecho referencia es inescapable la conclusión de que las excepciones consignadas en la ley son de restrictiva interpretación. No hay lugar en este esquema legislativo para una interpretación liberal en cuanto a los hechos vitales que son inscribibles.

La Ley del Registro Demográfico, en consecución de nuestras leyes y nuestra política pública, provee para la inscripción de la legitimación o reconocimiento de hijos extramatrimoniales. Veamos.

"En casos de legitimación, si el nacimiento hubiera sido previamente inscrito, la inscripción de tal nacimiento se sustituirá por otra en que conste el nuevo estado jurídico del inscrito como hijo legítimo." 24 L.P.R.A. sec. 1134.

"... Disponiéndose, sin embargo, que cuando el reconocimiento de un hijo natural se hiciere en documento público o en una declaración jurada bastará la presentación de dicho documento o declaración para que el encargado del Registro Demográfico proceda a inscribir el mismo, y a ese efecto, se llenará el correspondiente certificado de inscripción; Disponiéndose, además, que en caso de que el nacimiento de tal hijo hubiera sido previamente inscrito se llevará al certificado los datos adicionales que resulten de tal reconocimiento. . . ." 24 L.P.R.A. sec. 1231.

Como complemento, la Ley Núm. 42 de 1ro de mayo de 1945, en su Art. 1, dispone:

"En todo caso de legitimación o de reconocimiento de hijo natural será obligación del encargado del Registro Demográfico proceder a hacer los asientos, anotaciones o inscripciones correspondientes en las inscripciones de las personas que resultan afectadas por tal legitimación o reconocimiento."

■ No creemos que estas disposiciones, por sí solas, apoyen la inscripción de un nacimiento ocurrido fuera de Puerto Rico. Éstas no se pueden abstraer de sus medios, de la ley a la que pertenecen, y la Ley de Registro Demográfico sólo permite la inscripción de nacimientos ocurridos fuera de Puerto Rico cuando se dan ciertas circunstancias a que hemos hecho referencia, que no están presentes en el caso de autos.

Por otro lado, el propósito de estas disposiciones es impedir que en el Registro Demográfico se consagren iniquidades que han sido abandonadas por nuestro Derecho vigente. En el caso de autos nuestra interpretación no contraviene ese propósito. La niña no nació aquí y no estando inscrita en nuestro Registro Demografico, no está plasmada en dicho Registro su condición anterior de hija natural. Al no poder ser inscrita aquí, no se le está negando derecho alguno.

■ Señala la recurrente que negar la inscripción de su hija en Puerto Rico es contrario a la disposición constitucional de nuestra Carta de Derechos que prohíbe todo discrimen por motivo de nacimiento u origen. Constitución del Estado Libre Asociado, Art. II, Sec. 1. Discrepamos. La sentencia recurrida le reconoce a la niña su condición de hija del demandado, con todos los derechos a ello inherentes. La imposibilidad de su inscripción no se debe a su condición, sino al lugar de su nacimiento. No puede haber discrimen alguno porque no se admita a inscripción como nacido aquí a quien nació en otro lugar.

Argumenta también la recurrente que negar la inscripción del nacimiento de su hija en Puerto Rico viola la cláusula de igual protección de las leyes. Constitución, Art. II, Sec. 7. Dice que con ello se crea una clasificación irrazonable pues se permite la inscripción de la filiación de personas nacidas aquí, la inscripción de personas adoptadas aquí pero nacidas fuera, y la de adopciones celebradas en otros países de personas nacidas aquí, pero se niega la inscripción de la filiación a puertorriqueños que no han nacido en Puerto Rico

y cuya condición de hijos se basa en nuestro sistema de Derecho.

 Se pueden identificar actualmente tres criterios en el análisis constitucional de la igual protección de las leyes: el tradicional mínimo o de nexo racional; el de escrutinio estricto o del examen minucioso; y el intermedio, de reciente surgimiento. Véanse *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 277–278 (1975); *Craig* v. *Boren*, 429 U.S. 190 (1976); Tribe, *American Constitutional Law*, The Foundation Press, N.Y., 1978, secs. 16-2, 16-6, 16-30; Bice, *Standards for Judicial Review Under the Equal Protection and Due Process Clauses*, 50 So. Cal. L. Rev. 689 (1977).

 El criterio del escrutinio estricto es generalmente empleado cuando una ley establece una clasificación inherentemente sospechosa o cuando afecta derechos fundamentales. *Zachry International*, supra; Tribe, *supra*, sec. 16-6. En *Wackenhut Corp.* v. *Rodríguez Aponte*, 100 D.P.R. 518, 531 (1972), señalamos que están sujetas a un minucioso examen judicial, por considerarse inherentemente sospechosas, todas las clasificaciones tangentes con la dignidad del ser humano y con el principio de la igualdad ante la ley. (3) Caen bajo esta categoría las clasificaciones o discrímenes por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas y nacionalidad. *Wackenhut Corp.*, supra. En el caso de autos no hay una clasificación inherentemente sospechosa. La Ley del Registro Demográfico no se basa en los criterios señalados en *Wackenhut*, supra, para determinar cuáles hechos vitales son inscribibles y cuáles no. El criterio del lugar geográfico del nacimiento para fines de una

---

(3) Para un examen de los criterios que el Tribunal Supremo federal ha empleado para reconocer como sospechosa una clasificación, véase *Notes of Interests, Fundamental and Compelling; The Emerging Constitutional Balance*, 57 Boston U. L. Rev. 462, 470–475 (1977). El Tribunal Supremo federal se ha expresado en cuanto a las características de una clasificación sospechosa en *San Antonio Independent School District* v. *Rodríguez*, 411 U.S. 1, 28 (1973), y *Frontiero* v. *Richardson*, 411 U.S. 672, 684–688 (1973). Estos criterios, sin embargo, no han sido aplicados consecuentemente. Wilkinson, *The Supreme Court, the Equal Protection Clause, and the Three Faces of Constitutional Equality*, 61 Va. L. Rev. 945, 978–983 (1975).

inscripción demográfica en nada atenta contra la dignidad humana y la igualdad ante la ley.

La exclusión de la inscripción en el caso de autos tampoco obedece a una clasificación que afecta impermisiblemente un derecho o interés fundamental. Aquí no se le ha afectado derecho fundamental alguno a la menor, puesto que ha sido declarada hija del demandado. No se le ha negado la filiación por el hecho de que haya nacido en otra jurisdicción. No se niega a la niña derecho fundamental alguno protegido por nuestra Carta de Derechos o por la Constitución federal. (4)

Se reconoce la existencia de un tercer criterio de análisis constitucional en la esfera de la igual protección de las leyes, conocido como el criterio intermedio. Note, *Equal Protection and the "Middle Tier": The Impact on Women and Illegitimates,* 54 Notre Dame Lawyer, 303, 317 (1978); Tribe, *supra,* sec. 16-30; Bice, *supra,* págs. 698, 699, 702–707. Las circunstancias que motivan el empleo del análisis intermedio son la presencia de intereses individuales importantes, aunque no sean necesariamente fundamentales, y el uso de criterios sensitivos de clasificación, aunque no sean necesariamente sospechosos. Tribe, *supra,* sec. 16-31. Así, por vía de ejemplo, en *Craig* v. *Boren,* 429 U.S. 190 (1976), y en *Orr* v. *Orr,* 440 U.S. 268 (1978), estaba presente una clasificación basada en el sexo; en *Stanley* v. *Illinois,* 405 U.S. 645 (1972), y en *Caban* v. *Mohammed,* 441 U.S. 380 (1979), las respectivas leyes estatales vulneraban el interés de padres solteros sobre sus hijos; y en *Trimble* v. *Gordon,* 430 U.S. 762 (1977), la ley

---

(4) El Tribunal Supremo federal ha declarado que derechos constitucionales sustantivos sólo son aquellos que gozan de garantía expresa o implícita en alguna disposición constitucional. *San Antonio* v. *Rodríguez,* 411 U.S. 1, 33 (1973). La jurisprudencia del tribunal federal más alto ha protegido a través de la igual protección de las leyes los siguientes derechos fundamentales: el derecho a viajar interestatalmente (*Shapiro* v. *Thompson,* 394 U.S. 618 (1969)); el derecho al voto (*Reynold* v. *Sims,* 377 U.S. 533 (1964); *Harper* v. *Virginia Board of Elections,* 383 U.S. 663 (1966)); el derecho a contraer matrimonio (*Zablocki* v. *Redhail,* 434 U.S. 374 (1978); *Loving* v. *Virginia,* 388 U.S. 1, 11–12 (1967)); el derecho al igual acceso a las cortes (*Griffin* v. *Illinois,* 351 U.S. 12 (1956); *Douglas* v. *California,* 372 U.S. 353 (1963); *Anders* v. *California,* 386 U.S. 738 (1967)); y el derecho a la procreación (*Skinner* v. *Oklahoma,* 316 U.S. 535 (1942)).

estatal contenía una clasificación a base del nacimiento y, además, se privaba al hijo ilegítimo de su participación en la sucesión intestada paterna. Evidentemente el caso de autos no presenta una interferencia con intereses individuales de la magnitud de la que había en los casos citados. El uso del criterio intermedio en el caso de autos tampoco está justificado.

Consideramos aplicable al caso de autos el criterio mínimo o de nexo racional. Éste requiere que la clasificación legislativa tenga una relación racional con un fin gubernamental legítimo. *Zachry International* v. *Tribunal Superior,* 104 D.P.R. 267, 277 (1975); *Eisenstadt* v. *Baird,* 405 U.S 438 (1972); *San Antonio Independent School District* v. *Rodríguez,* 411 U.S. 1, 55 (1973); Tribe, *supra,* sec. 16-2; Bice, *supra,* págs. 689, 698 (1977).

Surge del esquema legislativo que el propósito de la Ley del Registro Demográfico es conservar un registro de los hechos vitales que ocurran en Puerto Rico. Nada hay de ilegítimo en cuanto a ese fin. Se cumple el mismo al obligar la inscripción de los nacimientos ocurridos en Puerto Rico y excluir de inscripción aquellos que ocurran fuera. Permitir la inscripción de adopciones en las dos modalidades contempladas por la ley tampoco carece de racionalidad. Las disposiciones sobre adopción en la Ley del Registro Demográfico complementan las enmiendas sobre adopción en el Código Civil y su propósito es considerar para todos los efectos como hijos legítimos a los hijos adoptivos. *Diario de Sesiones,* Vol. II, T. II y IV, págs. 1289 y 2373 respectivamente. Nuestro Derecho positivo equipara al hijo adoptado con el hijo biológico, 31 L.P.R.A. secs. 533, 534. Para nuestro Derecho, la adopción crea entre el adoptado y el adoptante la misma situación que la filiación por nacimiento, e iguala la adopción "a la condición natural del ser humano". *Ex parte J.A.A.,* 104 D.P.R. 551, 558 (1976); *Rivera Coll* v. *Tribunal Superior,* 103 D.P.R. 325, 332 (1975). Nuestro Derecho, por tanto, considera la adopción como si fuera un nacimiento, y ya hemos visto que los nacimientos constituyen hechos vitales. En tanto en

cuanto la Ley del Registro Demográfico permite la inscripción de adopciones, cumple con su propósito de mantener ur registro de hechos vitales. En ello reside su racionalidad.

En nada afecta a este nexo racional el que se inscriban las adopciones que aquí se realicen y que afecten a personas nacidas en el extranjero, y la inscripción de aquellas adopciones que se realicen fuera de Puerto Rico y que conciernan a personas nacidas aquí. En cuanto a las primeras, éstas se consideran como un nacimiento ocurrido en Puerto Rico. En cuanto a las segundas, es necesario que se hagan constar porque la adopción es un hecho transcendental que rompe todo nexo del adoptado con sus padres biológicos. 31 L.P.R.A. sec. 534.

Excluir de la inscripción en el Registro Demográfico a filiaciones ocurridas en Puerto Rico que conciernan nacimientos ocurridos fuera de la isla y previamente inscritos en el exterior cumple con el propósito de la ley examinada. La ley considera a semejante nacimiento como un hecho vital que no ocurre en Puerto Rico y como tal, no es inscribible. Nada dispone la Ley del Registro Demográfico en cuanto a la inscripción de filiaciones que afecten a nacidos fuera de Puerto Rico. Incluirla en el esquema legislativo sería legislar judicialmente.

Concluimos, a la luz de estas consideraciones, que la Ley del Registro Demográfico no viola nuestra cláusula constitucional de igual protección de las leyes al no permitir la inscripción de un nacimiento en casos como el de autos.

IV

El planteamiento sobre provisión alimenticia es improcedente. La recurrente alegó en su demanda que el recurrido ha provisto para la niña "y provee actualmente la cantidad de $20.00 semanales en concepto de pensión alimenticia". (Párr. 6 de la demanda.) No solicitó aumento de dicha pensión. La sentencia recurrida reconoció como un hecho

(determinación núm. 10), que: "El demandado está contribuyendo a tono con sus recursos al sostenimiento de la menor...".
Es al solicitar reconsideración de la sentencia cuando por primera vez la recurrente planteó que se impusiera al demandado el pago de una pensión alimenticia. No había que hacerlo. No hay por qué ordenar a una persona que haga lo que ya está haciendo. Su obligación de proveer para el sustento de la niña conforme a sus recursos y a las necesidades de ella no se planteó en las alegaciones ni se ha afectado por la sentencia. La recurrente cuenta con medios efectivos en Derecho para obligar al recurrido a descargar su obligación alimenticia si éste faltase a ello.

*Se dictará sentencia que confirme la dictada por el Tribunal Superior aquí recurrida.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión.