# 96 DTA 101

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

VICTOR M. EMERIC CATARINEAU Y OTROS
Demandantes-Apelantes

v.

GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE P.R. Y OTROS
Demandados-Apelados

Núm. KLAN-95-01371

San Juan, Puerto Rico, a 23 de abril de 1996

Panel integrado por su presidenta, la Juez Alfonso de Cumpiano
y los Jueces Broco Oliveras y Miranda De Hostos

Alfonso de Cumpiano, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Se nos plantea en este recurso la ilegalidad e inconstitucionalidad de las tarifas impuestas por la Autoridad de los Puertos a los usuarios del servicio de lanchas (ferries) en la vía marítima entre Vieques-Culebra-Fajardo. Los reclamos de los apelantes no encuentran apoyo en el derecho aplicable.

## I

Cerca de novecientos doce (912) residentes de Vieques, Fajardo y Culebra presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, acción civil de sentencia declaratoria, *injunction, mandamus*, restitución y daños y perjuicios contra el Gobernador del Estado Libre Asociado de Puerto Rico y otros funcionarios y entidades públicas, alegando ilegalidad de las tarifas impuestas por la Autoridad de los Puertos a los usuarios de la ruta marítima que conecta a Vieques y Culebra con la isla principal conocida como PR252.

Luego de varios trámites procesales relatados en la sentencia apelada, los demandantes solicitaron sentencia sumaria, bajo el fundamento que no existía controversia de hechos y que la controversia de derecho entre las partes se limitaba a determinar si el aprobar y poner en vigor las tarifas impugnadas constituye un acto ilegal e inconstitucional.

El tribunal, en una fundamentada sentencia, consideró y analizó las alegaciones de los demandantes para sustentar la ilegalidad de las tarifas, consistentes en: el ejercicio indebido del poder de expropiación del Gobierno con propósito de lucro, la privación de su derecho a viajar, la violación del Federal Aid Highway Act, la limitación o restricción al libre comercio entre los estados, la violación a la igual protección de las leyes, la violación a la regla de uniformidad geográfica en la imposición de contribuciones. Luego de discutir y aplicar el derecho en cuanto a las aludidas alegaciones, el tribunal declaró sin lugar la solicitud de sentencia sumaria de los demandantes y desestimó en todas sus partes la demanda.

No conforme con el dictamen, los demandantes presentaron este recurso de apelación, en el que imputan error al tribunal en su determinación sobre la validez de las tarifas impugnadas. Reproducen sus alegaciones ante el Tribunal de Primera Instancia sobre violaciones legales y constitucionales en su imposición. Añaden que erró el tribunal al aplicar retroactivamente la enmienda de 1991 del Federal Aid Highway Act, bajo la cual no existe ahora requisito de vías alternas para la imposición del peaje.

La Autoridad de Carreteras y Transportación, la Autoridad de los Puertos y el Estado Libre Asociado presentaron en sus alegatos ante este Tribunal argumentos que sustentan la sentencia apelada.

Analizados los planteamientos de las partes y las determinaciones del tribunal a la luz del derecho aplicable, procede confirmamos la sentencia.

## II

Examinemos las alegaciones de los apelantes y las razones por las cuales entendemos que el tribunal no erró en su sentencia.

Los apelantes alegan que la Resolución Conjunta Núm. 37 de 31 de mayo de 1967, que viabilizó la expropiación de las propiedades de Calderone Lines, Inc. la cual brindaba anteriormente el servicio de transportación en la ruta marítima en cuestión, no autorizó a la Autoridad de los Puertos a imponer tarifas, derechos o rentas, por el servicio de lanchas que se adquiría. Arguyen que no se dio esa autorización porque la Constitución del Estado Libre Asociado no permite el uso del poder de dominio público del Estado con fines de lucro, mediante el mecanismo de expropiación.

La ley que crea la Autoridad de los Puertos, Ley Núm. 125 de 7 de mayo de 1942, según enmendada, 23 L.P.R.A. secs. 331 y ss., autoriza a dicha entidad a adquirir por expropiación forzosa cualquier facilidad de transporte con el fin de explotarla. Artículo 6(h), 23 L.P.R.A. sec. 336(h). Le faculta, además, para imponer y cobrar tarifas por el uso de sus facilidades o servicios, las que deberán ser suficientes para cubrir los gastos de funcionamiento. Artículo 6(1)(1), 23 L.P.R.A. sec. 336(1)(1) (Supl. 1995).

Bajo el ejercicio de esos poderes, la Autoridad de los Puertos adquirió las facilidades de transportación marítima de pasajeros y carga entre Vieques, Culebra y Fajardo. La determinación de uso público de dicha actuación quedó contemplada en la Resolución Conjunta de la Cámara Núm. 81 de 30 de junio de 1966. El propósito expreso y manifiesto fue el de brindar un mejor servicio, ante las

frecuentes quejas de la ciudadanía. La Resolución Conjunta Núm. 37 de 31 de mayo de 1967, invocada por los apelantes, autorizó el pago de la expropiación forzosa a Calderone Lines, Inc.

No hay razón o circunstancia alguna que sustente la posición de los apelantes a los efectos de que la Autoridad de los Puertos ejerció el poder de expropiación para un fin privado al continuar brindando el mismo servicio luego de la expropiación, bajo el cobro de tarifas. Conforme el análisis jurisprudencial efectuado en la sentencia apelada, con el cual coincidimos, el elemento privado que pueda estar incidentalmente presente en una expropiación que sea para beneficio del público, no desvirtúa el propósito legislativo de uso público. *E.L.A. v. Fajardo Sugar Co.,* 79 D.P.R. 321, 335-336 (1956); *P.R. Tel. Co. v. Trib. de Contribuciones,* 81 D.P.R. 982, 997-998 (1960).

Como antes indicado, el cobro de la tarifa encuentra base y fundamento en la Ley Núm. 125, *supra.* Esta claramente concede facultad para el cobro del servicio, con el propósito del uso del dinero obtenido para cubrir los gastos de funcionamiento de la Autoridad de los Puertos al proveerlo. No había necesidad de facultar a ésta al cobro, cuando la Legislatura autorizó la expropiación de las facilidades que tratamos. Esa expropiación habría de darse bajo el marco legal imperante, a menos que se dispusiere lo contrario, lo que no se hizo. El récord no sustenta la posición de los apelantes de que el servicio a ofrecerse habría de ser gratuito.

Por ello, resulta correcta la determinación del Tribunal de Primera Instancia en torno a que el cobro de tarifas por los servicios de transportación no responde a un fin privado. El fin público de procurar un mejor servicio de transportación marítima es válido, y no existe base alguna para intervenir con esa determinación legislativa.

Los apelantes alegan, además, que la imposición de la tarifa afecta adversamente a los usuarios residentes de Vieques y Culebra, quienes tienen que utilizar constantemente la Ruta PR252, única ruta disponible para recibir servicios esenciales, que como contribuyentes, deben equipararse al resto de los habitantes de la Isla en cuanto al uso y disfrute de carreteras que conectan los distintos municipios. Lo anterior, plantean, limita su derecho a viajar, constituye un discrimen por origen, condición social o localización geográfica, les sujeta a trato desigual en contraposición con los otros residentes de la Isla, lo que debe ser sometido a escrutinio judicial estricto, e incide sobre el libre comercio.

Esos planteamientos fueron debidamente considerados en la sentencia y los apelantes no ofrecen argumentos que desvirtúen el análisis del tribunal apelado. En síntesis, el derecho a viajar ha sido reconocido bajo la Constitución Federal por el Tribunal Supremo de los Estados Unidos, como que emana de la cláusula de privilegios e inmunidades del Artículo IV, la cláusula de comercio, la cláusula de privilegios e inmunidades de la Decimocuarta Enmienda, la estructura federal del Gobierno de los Estados Unidos.

Los propósitos que informan el aludido derecho consisten fundamentalmente en impedir el discrimen de los ciudadanos de los estados de la Unión y permitir el libre movimiento interestatal entre éstos. El derecho a viajar al extranjero también se ha reconocido, sujeto al amplio poder gubernamental sobre la inmigración. Aunque ninguna de esas circunstancias está presente en el cobro de la tarifa entre Vieques y Culebra y la Isla, debe quedar claro que bajo los principios constitucionales federales no todas las leyes que restringen la movilidad interestatal han de estar sujetas al examen de escrutinio judicial estricto. Para que una ley infrinja el derecho a viajar, tiene que mediar el propósito primordial de impedir dicho derecho, o el empleo de clasificaciones para penalizar su ejercicio. John E. Nowak y Ronald D. Rotunda, Constitutional Law, Fourth Ed., St. Paul, Minn., West Pub. Co., 1991, sec. 14.38, págs. 873-886.

Más aún, se ha reconocido por el Tribunal Supremo de los Estados Unidos la validez constitucional del cargo estatal impuesto a los pasajeros que aborden aviones, destinado a mejorar y conservar las instalaciones de los medios de transportación. Para ello no se requirió que el Estado demostrase interés apremiante al establecer el cargo por viajar, puesto que se entendió que el cargo para beneficio público, más que impedir, lo que hacía era apoyar el derecho a viajar. Evansville-*Vanderburgh Airport Authority v. Delta Airlines,* 405 U.S. 707, 714 (1972).

Ni el derecho a viajar, ni la jurisprudencia citada por los apelantes, le es de aplicación a la

imposición por la Autoridad de los Puertos de una tarifa a los pasajeros de Vieques y Culebra por el servicio de lanchas.

Tampoco procede el argumento de los apelantes en torno a que la tarifa viola la cláusula de igual protección de las leyes, la disposición constitucional que veda el discrimen por condición social y por localización geográfica.

Las disposiciones provistas en el Artículo II, secciones 1 y 7 de la Constitución del Estado Libre Asociado, respectivamente, prohíben el discrimen y garantizan la igual protección de las leyes. Esta última cláusula constitucional se activa cuando la legislación o acción gubernamental crea clasificaciones entre grupos, discriminando a unos frente a otros. Esta garantía ni prohibe, ni impide que el Estado establezca clasificaciones, ni exige trato igual a todas las personas. Lo que está prohibido es el trato desigual injustificado. *San Miguel Lorenzana v. E.L.A.*, 135 D.P.R. ___ (1993); **93 J.T.S. 135,** pág. 11165.

En el análisis de si una legislación o acción gubernamental viola la cláusula de igual protección de las leyes, el Tribunal Supremo de Puerto Rico ha desarrollado y aplicado los siguientes criterios: el de escrutinio estricto o examen minucioso, y el tradicional mínimo o de nexo racional. El de escrutinio estricto se utiliza cuando la clasificación establecida por ley o acción gubernamental es inherentemente sospechosa o cuando afecta derechos fundamentales. En tales circunstancias, el Estado viene obligado a probar que existe un interés apremiante que justifica la clasificación y además, que ésta promueve o adelanta ese interés. Cuando se trata del escrutinio tradicional mínimo, sólo se requiere que la clasificación sea razonable y se presume que la ley es constitucional si existe un mero nexo racional entre el propósito legislativo y la clasificación establecida. *Berberena v. Echegoyen*, 129 D.P.R. ___ (1991); **91 J.T.S. 65,** pág. 8801.

Cuando se trata de reglamentación de naturaleza socioeconómica, como en este caso en que se impugna la imposición de una tarifa, el criterio de revocación aplicable es el del escrutinio tradicional o nexo racional. *San Miguel Lorenzana v. E.L.A., supra*, págs. 11166, 11168-11170; *Salas v. Municipio de Moca,* 119 D.P.R. 624, 632 (1987). Aunque los apelantes invocan derechos fundamentales afectados, mencionan los gastos en que se incurre para recibir servicios esenciales, como médico-hospitalario, estudios, y asistir a sus obligaciones. No identifican ninguno de los derechos fundamentales reconocidos expresa o implícitamente en la Constitución que de base a su contención. En cuanto a sus señalamientos, cabe apuntar que la clasificación no es sospechosa. La tarifa se cobra a toda persona que use el servicio. No aplica el discrimen por condición social, que se refiere a la condición de indigente. *Molina v. CRW,* 114 D.P.R. 295, 308-312 (1973, Op. concurrente, Irizarry Yunqué, J.), Raúl Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, San Juan, Colegio de Abogados de Puerto Rico, 1988, Vol. II, págs. 1189-1192. Tampoco discrimina por localización geográfica, cuyo alcance no se precisó por los apelantes. Véase *León Rosario v. Torres,* 109 D.P.R. 804, 813-814 (1980).

Aplicado, pues, el criterio de nexo racional, la actuación impugnada ni es sospechosa de su faz, ni afecta derecho fundamental alguno. Estamos contestes con la determinación del tribunal de que la imposición de la tarifa está racionalmente relacionada con el propósito del Estado de dar un mejor servicio de transportación marítima y que por lo tanto no existe discrimen hacia los residentes de Vieques y Culebra.

Los apelantes arguyen que la tarifa impuesta limita o restringe el libre comercio entre los estados por cuanto el desarrollo económico de Vieques y Culebra depende del libre flujo de bienes a través de la ruta PR252.

La cláusula de comercio interestatal, dispuesta en el Artículo I, sección 8 de la Constitución de los Estados Unidos, le confiere al Congreso la facultad de regular el comercio entre los estados. Además, le impone limitaciones en cuanto -a su facultad para discriminar contra el comercio interestatal. Mas si la reglamentación persigue proteger un interés estatal legítimo, si existe un nexo racional entre los propósitos de ésta y la clasificación establecida, y si el efecto que la actuación estatal tiene sobre el comercio interestatal es incidental, se sostendrá dicha reglamentación. Nowak y Rotunda, ob. cit., sec. 8.7, pág. 288. ■

No nos convence la argumentación de los apelantes sobre la restricción al libre comercio, ni están presentes elementos de discriminación intencional contra el comercio interestatal, sino una actuación del Estado Libre Asociado apoyada en un interés gubernamental legítimo, cual es el brindar un mejor servicio.

Respecto a la mención por los apelantes de que el cobro de la tarifa viola la regla de uniformidad geográfica contributiva, y el disfrute de las facilidades de uso público, entendemos que el tribunal apelado dispuso adecuadamente de la alegación. Como bien señaló al concluir su consideración, el caso no trata de la imposición de una contribución, sino de una tarifa impuesta bajo las facultades legales de la Autoridad de los Puertos.

Finalmente, los apelantes alegan que el tribunal erró al aplicar retroactivamente la enmienda de 1991 al Federal Aid Highway Act, 23 U.S.C. 129 (Sup. 1994) y al no conceder el remedio por el plazo en que estuvo vigente el requisito no cumplido de vías alternas. Su reclamo bajo la ley federal de referencia se basa en sus disposiciones a los efectos de que toda carretera construida a su amparo, deberá ser libre de peaje. Sostienen los apelantes que como la ruta marítima única PR252 forma parte del mapa oficial de carreteras de Puerto Rico, ello la hace elegible para fondos federales, por lo que es improcedente la imposición de los cargos de peaje bajo la referida ley.

El tribunal determinó que bajo el Intermodal Surface Transportation Efficiency Act de 1991, Pub. L. 102-240, Dec. 18, 1991, no existe ya el requisito de vías alternas para la imposición del peaje, y en el caso de las lanchas (ferries) la única limitación es que el dinero se utilice para mantenimiento de las facilidades.

La disposición del Federal Aid Highway Act invocada por las apelantes dispone en su sección 301:

*"Except as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from toll of all kinds."*

Dicha disposición se refiere a los peajes en las carreteras expresos (highways) no a los servicios de lanchas (ferries). 23 U.S.C. 101(a). La Autoridad de los Puertos cobra por el uso del servicio de sus lanchas (ferries), no así por el uso de la vía marítima PR252. Además, este caso trata sobre una tarifa por el servicio de lanchas cuyo establecimiento no fue bajo la aludida ley federal. En resumen, las alegaciones de los apelantes no encuentran apoyo en la ley federal invocada. Por ello, es inconsecuente el planteamiento de la aplicación retroactiva de la enmienda de 1991 a la misma.

En definitiva, no cometió error el tribunal al desestimar la demanda por los fundamentos expuestos en su sentencia.

### III

En virtud de todo lo anterior, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

ESCOLIO 96 DTA 101

1. Véase, además, análisis de la jurisprudencia federal, a esos efectos, por nuestro Tribunal Supremo, en los casos de *Iberia v. Srio. de Hacienda,* 136 D.P.R. ___ (1994), **94 J.T.S. 8,** pág. 11470; *M. & B.S. v. Depto. de Agricultura,* 118 D.P.R. 319 (1987).