EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| A.A.R.<br><br>        Peticionaria<br><br><br>Ex Parte | Certiorari<br><br>2013 TSPR 42<br><br>188 DPR ____ |

Número del Caso: CC-2008-1010


Fecha: 10 de abril de 2013


Tribunal de Apelaciones:

        Región Judicial de San Juan, Panel III

Abogados de la Parte Peticionaria:

        Lcda. Nora Vargas Acosta
        Lcda. Josefina A. González González
        Lcda. María L. Jiménez Colón

Oficina de la Procuradora General:

        Lcda. Irene Soroeta Kodesh
        Procuradora General

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Leticia Casalduc Rabell
        Subprocuradora General

        Lcda. Isabel Sánchez del Campo
        Procuradora General Auxiliar

Amicus Curiae:

        Colegio de Abogados de Puerto Rico
                Lcdo. Arturo L. Hernández González

        Profesor Carlos A. Del Valle Cruz

        Columbia University Sexuality and Gender Law Clinic
                Lcda. Judith Berkan
                Lcda. Suzanne Goldberg

        National Center for Lesbian Rights
        American Civil Liberties Union
                Lcdo. William Ramírez Hernández
                Lcdo. Josué González Ortiz

        Academia Americana de Pediatría Capítulo de Puerto
        Rico/ Escuela de Medicina de Puerto Rico, Depto. de
        Pediatría
                Lcda. Alicia E. Lavergne Ramírez

Asociación de Psicología de Puerto Rico
Lcdo. Osvaldo Burgos Pérez

Coalición Ciudadana en Defensa de la Familia
Lcdo. Juan Gaud Pacheco

Alianza de Juristas Cristianos
Lcdo. Edwardo García Rexach
Lcda. Ivette M. Montes Lebrón


Materia:   Resolución del Tribunal con Votos Particulares de Conformidad y Votos Disidentes


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| A.A.R. | | *Certiorari* |
|---|---|---|
| Peticionaria | CC-2008-1010 | |
| *Ex Parte* | | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de abril de 2013.

Examinada la Primera Moción de Reconsideración presentada por la parte peticionaria, se provee No Ha Lugar.

Vistas la *Moción para Presentar Alegato de LAMBDA Legal Defense and Education Fund y la Fundación Artículo II como Amigos del Tribunal*, la *Moción Solicitando Autorización para Comparecer como Amicus Curiae* del Lcdo. Roberto García Cabrera, la *Moción Solicitando Autorización para Comparecer como Amicus Curiae* del Lcdo. Jorge A. Irizarry Rodríguez y la *Moción Solicitando Autorización para Comparecer como Amicus Curiae* del Dr. Wilkins Román Samot se provee a todas No Ha Lugar.[1]

Atendida como una Moción de Reconsideración la *Moción Informativa en Respuesta a Moción de Reconsideración y Solicitud de Autorización y Término para presentar postura del Estado en Relación a la Moción de Reconsideración de la Parte Peticionaria* presentada por la Procuradora General de Puerto Rico el 18 de marzo de 2013 se provee No Ha Lugar por falta de jurisdicción al haberse presentado fuera del término jurisdiccional de diez (10) días laborables que provee la Regla 45 del Reglamento de este Tribunal.

Notifíquese inmediatamente a las partes por teléfono, correo electrónico, fax y por la vía ordinaria.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres hizo constar la siguiente expresión, a la cual se unió el Juez Asociado señor Feliberti Cintrón:

---

[1] Estas mociones no cumplen con la Regla 43 del Reglamento de este Tribunal.

El Juez Asociado señor Martínez Torres está conforme con la decisión del Tribunal y hace constar que el Estado habrá cambiado de parecer pero la ley no. En vez de gastar tinta y tiempo en tratar de convencernos de que la Constitución dice lo que no dice, sería prudente y más provechoso para su nueva postura que el Estado dirigiera sus esfuerzos a enmendar la ley.

El Juez Asociado señor Rivera García emitió un Voto Particular de Conformidad. El Juez Asociado señor Kolthoff Caraballo emitió un Voto Particular de Conformidad.

La Jueza Asociada señora Fiol Matta reconsideraría e hizo constar la siguiente expresión:

La Jueza Asociada señora Fiol Matta reitera lo expuesto en su Voto disidente de 20 de febrero de 2013 en el caso de epígrafe. Por ello, considera que el Tribunal debería reconsiderar la decisión que se tomó en el caso y acogería la moción de reconsideración presentada por la peticionaria A.A.R. Como explica el Juez Presidente señor Hernández Denton en su Voto disidente en esta ocasión, es lamentable que el Tribunal desaproveche la oportunidad de estudiar los nuevos fundamentos expuestos por la peticionaria en su Moción de Reconsideración, así como de analizar los planteamientos sobre el cambio de política pública del Estado que expone la Moción Informativa de la Oficina de la Procuradora General. Tal como indica la Juez Asociada señora Rodríguez Rodríguez en su Voto particular disidente, no se debe descartar lo manifestado por la Procuradora General en su Moción informativa —que no es una moción de reconsideración y se rige por otros términos— cuando se utilizó la postura de su Oficina para justificar la Opinión del Tribunal certificada anteriormente. Tampoco debe perderse de vista que el deber de la Procuradora General es defender la Constitución de Puerto Rico por encima de cualquier ley del País que la contravenga y eso es lo que intenta esta funcionaria con su escrito ante este Tribunal. Asimismo, cabe advertir que, irrespectivamente de la posturas de cada cual sobre una controversia, no se deben tratar de forma despectiva las ideas que presentan las

partes para fundamentar sus solicitudes ni el trabajo que realizan los funcionarios públicos en cumplimiento de lo que entienden que es su deber.

El Juez Presidente señor Hernández Denton emitió un Voto Particular Disidente. La Jueza Asociada señora Rodríguez Rodríguez emitió un Voto Particular Disidente. El Juez Asociado señor Estrella Martínez reconsideraría.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

A.A.R.

    Peticionaria             CC-2008-1010    Certiorari

Ex Parte

Voto Particular de Conformidad emitido por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 10 de abril de 2013.

## I

Existen verdades absolutas. Son verdades perennes, inmutables, algunas insondables, pero todas ineludibles. Las verdades absolutas, por definición, no están sujetas a nuestra razón. Por medio de la razón las reconocemos, pero no las podemos hacer más o menos ciertas; si las reconocemos son verdad y si no las reconocemos no dejan de serlo.

El popular o populista relativismo cultural ejerce su influencia sobre toda verdad y oblitera la existencia de las verdades absolutas. **Sin embargo, el Derecho, como reflejo del ser racional**

**e instrumento de la justicia, no puede negar tales verdades.** El que la tierra gira sobre su propio eje y que tal realidad marca las horas del día, son verdades absolutas y el Derecho no puede pretender obviarlas. El que la existencia del hombre es finita es otra verdad absoluta, sin la cual no tendría sentido todo el milenario derecho sucesorio. El que el ser humano nace, envejece y muere en un ciclo extraordinario de existencia, es otra verdad absoluta que exige una pena para aquel que troncha intencional y maliciosamente ese derecho natural e inalienable a la vida.

La clasificación del sexo, como condición orgánica de la raza humana, es otra verdad absoluta. El ser humano nace sexualmente varón o hembra, masculino o femenino. Podemos intentar negar tal verdad ajustando nuestra conducta y preferencias sexuales a lo que pensamos o sentimos, pero tal decisión no hace menos cierto lo que por naturaleza realmente somos. ¿Debe entonces el Derecho obviar tal axioma haciendo abstracción de lo que es el orden natural? Tal es la pregunta que con relación a este tipo de controversias debe hacerse todo pensador de la justicia como instrumento del orden social.

## II

En su Voto Disidente, el distinguido Juez Presidente de este Tribunal, Hon. Federico Hernández Denton, inicia su ponencia señalando que "la decisión de esta Curia contraviene el mejor bienestar de una menor que ha sido amada y protegida por sus madres desde antes de su

nacimiento".[2] Con relación a esta expresión, es menester señalar que la decisión tomada en este caso por una mayoría de esta Curia no ordena cambio alguno en lo que ha sido la relación filial que incuestionablemente existe entre la peticionaria y la menor objeto de esta controversia. Esto es, el amor y los cuidados que conforme a la prueba presentada le han sido dispensados a esta niña, así como la amalgama de disposiciones legales y recursos notariales que siempre han estado a su disposición, en nada se verán afectados por nuestra decisión.

### III

Por último, la Oficina de la Procuradora General ha comparecido ante este Tribunal y mediante una moción informativa nos anuncia que el Estado apoya la adopción solicitada por las peticionarias. Si eso es así y considerando que la Rama Legislativa se encuentra en sesión, conviene entonces que en un ejercicio saludable de separación de poderes y balance democrático, sean las ramas democráticamente electas las que aprueben un proyecto de ley que resuelva de una vez la controversia. De esa manera servimos todos mucho mejor al extremadamente importante balance de poderes, que es piedra angular de nuestra democracia constitucional. Huelga decir que, si en el sano ejercicio de sus prerrogativas constitucionales las ramas electas por el Pueblo aprueban tal proyecto, este Tribunal

---

[2] Voto Disidente, Hon. Federico Hernández Denton, pág. 1.

nada tendría que decir pues el poder no está en nosotros sino en el Pueblo. Dejemos entonces que el Pueblo actúe.

Por lo tanto, reitero mi conformidad con la Resolución de este tribunal que declara "no ha lugar" la moción de reconsideración de la parte peticionaria.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

A.A.R.                                        *Certiorari*

Peticionaria

*Ex Parte*

                                 CC-2008-1010

Voto particular de conformidad emitido por el Juez Asociado señor RIVERA GARCÍA.

En San Juan, Puerto Rico, a 10 de abril de 2013.

Estoy conforme con la Resolución que deniega la solicitud de reconsideración de la peticionaria A.A.R. Asimismo, difiero con el mayor respeto del disenso por estar convencido de que sus razonamientos se distancian de los cimientos jurídicos que enunciamos en la Opinión mayoritaria y por consiguiente, del estado de derecho. En ese contexto, nuevamente me veo precisado a emitir unas expresiones en torno a la controversia que nos ocupa. Ello, no con el interés de convencer a los que ya han asumido una postura y se niegan a observar los datos y la evidencia que ofrece la realidad y la experiencia humana sobre la filiación

natural, la cual reiteramos, debe ser imitada por la filiación adoptiva. Más bien, me pronuncio por el imperativo de adherirme a los postulados que rigen mi conciencia judicial.

Partiendo de que no existe un derecho fundamental a adoptar y de que la institución de adopción consiste en dar unos padres a un hijo y no un hijo a unos padres, me pregunto desde cuándo proteger el derecho de nuestra niñez a crecer en una familia diversa, es decir, conformada por madre y padre -personas de distinto sexo- imitando la naturaleza, es un discrimen para el adulto.[3] ¿Cuándo perdimos el norte de que la institución de la adopción gira en torno al bienestar del menor y no en torno al deseo del adulto?

Es oportuno invocar que en mi Opinión de conformidad sobre el caso de autos enfaticé que en la jerarquía de reconocimiento de derechos de la persona, mi balanza se inclina hacia los niños, población que no tiene la conciencia, ni la capacidad legal ni personal de defenderse de los graves daños que la voluntad adulta puede causarles si se materializa su pretensión de convertirlos en objeto o en el botín de sus conflagraciones personales. En consecuencia, ante el supuesto cambio de política pública que la Procuradora General enuncia en su tardía moción de reconsideración, me

---

[3] X. Lacroix, La confusion des genres: réponses à certaines demandes homosexuelles sur le mariage et l'adoption, Paris, Ed. Bayard, 2005.

reafirmo en que la balanza de mi conciencia seguirá inclinada a favor de nuestra niñez.

Debo llamar la atención a que en el título de la referida moción el Estado omite la realidad de lo que peticiona, que en contenido y sustancia no es otra cosa que una reconsideración de la Opinión mayoritaria que emitió esta Curia el 20 de febrero de 2013. Además de solicitar que le permitamos expresarse nuevamente sobre la controversia, la Procuradora General ha alterado todos sus argumentos para que obren a favor de la parte peticionaria. Ese proceder denota una desviación de su deber de defender la constitucionalidad del Artículo 138 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 539, que expresamente prescribe la política pública actual. Por el contrario, opta por unirse a la solicitud de reconsideración de la peticionaria.

En torno a ese extremo, es prudente señalar que en nuestro ordenamiento jurídico "[l]a moción de reconsideración funge como mecanismo para que el tribunal sentenciador modifique su fallo siempre y cuando tenga jurisdicción para eso". Febles v. Romar, 159 D.P.R. 714, 719 (2003). A su vez, los elementos de vital importancia en los que se fundamentan las normas procesales que rigen la solicitud de reconsideración son: "(1) evitar que los litigantes perdidosos utilicen tácticas dilatorias, y (2) ofrecer cierta estabilidad jurisdiccional en los casos, esto es, tener más seguridad de cuándo verdaderamente un

término jurisdiccional, como es el de la revisión, está próximo a vencer". Íd. pág. 719.

Como es sabido, un término jurisdiccional es "*fatal, improrrogable e insubsanable*, rasgos que explican por qué no puede acortarse, como tampoco es susceptible de extenderse". (Énfasis en el original.) *Martínez, Inc. v. Abijoe Realty Corp.*, 151 D.P.R. 1, 7 (2000). Precisa enfatizar que el término para presentar una moción de reconsideración es de carácter jurisdiccional y su transcurso tiene el efecto de impedir que el tribunal pueda considerarla. *Insular Highway v. A.I.I.Co.*, 174 D.P.R. 793 (2008); *J.P. v. Frente Unido I*, 165 D.P.R. 445 (2005).

Por su parte, en relación a la moción de reconsideración, la Regla 45 del Reglamento de este Tribunal dispone, en lo pertinente, que:

> (b) Toda moción de reconsideración deberá presentarse dentro del plazo **jurisdiccional** de diez días laborables mencionado en el inciso (a) de esta regla y no deberá exceder de diez páginas. No se aceptará un memorando de autoridades por separado ni una petición de prórroga para fundamentar una reconsideración presentada. Las citas de autoridades deberán discutirse en el cuerpo de la moción. El Secretario o la Secretaria denegará de plano cualquier moción de prórroga para presentar una moción de reconsideración o un escrito en apoyo a ésta. Si el Tribunal deniega la moción de reconsideración, el mandato se enviará cuatro días laborables después de la fecha cuando se envió a las partes la copia de la resolución, a menos que se haya presentado una segunda moción de reconsideración conforme a lo dispuesto en el inciso (c) de esta regla. (Énfasis suplido). 4 L.P.R.A. Ap. XXI-B R. 45.

Al interpretar la citada norma, es forzoso colegir que la acción de la Procuradora General está a destiempo y es equívoca en derecho. Constituye un manifiesto desacierto por parte del Estado desatender los términos jurisdiccionales para la presentación de una solicitud de reconsideración e intentar interceder en el proceso, en artificio de otros propósitos. Además, bajo el pseudónimo de *"Moción informativa en respuesta a moción de reconsideración y solicitud de autorización y término para presentar postura del Estado en relación a la moción de reconsideración de la parte peticionaria"* presentada el 18 de marzo de 2013, el Estado nos incita a que adoptemos por vía jurisprudencial un supuesto de política pública que aún no se ha materializado por la vía legislativa. En ese proceder, se pretende adelantar visiones contrarias a la política pública vigente en contravención a la norma que pautamos en la Opinión de este Tribunal.

Más aun, la moción de reconsideración del Estado va más allá e invita a esta Curia a asumir el rol que no le compete. Para ello, se basa en la "posibilidad" de que el Tribunal Supremo federal decida que la Defense of Marriage Act ("DOMA"), Ley Núm. 104, 110 Stat. 2419 y que la Proposition 8 del Estado de California son inconstitucionales bajo la tesis de que ambas piezas de ley son contrarias a la igual protección de las leyes.

Ante esas circunstancias, es ineludible puntualizar que la especulación no es un criterio que debe estar

presente en las determinaciones judiciales. En específico, no podemos decidir controversias que irrevocablemente afectarán la vida de todo un pueblo fundamentando nuestro proceder en la "posibilidad" de cambio de política pública. Más que conjeturas, tenemos ante nos evidencia concreta y abundante que es persuasiva y nos lleva a concluir que el interés de la niñez se adelanta reconociéndole su derecho a tener una madre y un padre.[4] Ello a pesar de lo que puedan sostener algunos que

---

[4] *"Children need a mother and a father*

There are significant innate differences between male and female that are mediated by genes and hormones and go well beyond basic anatomy. These biochemical differences are evident in the development of male and female brain anatomy, psyche, and even learning styles. Consequently, mothers and fathers parent differently and make unique contributions to the overall development of the child. Psychological theory of child development has always recognized the critical role that mothers play in the healthy development of children. More recent research reveals that when fathers are absent, children suffer as well. Girls without fathers perform more poorly in school, are more likely to be sexually active and become pregnant as teenagers. Boys without fathers have higher rates of delinquency, violence, and aggression.

Gender-linked differences in child rearing styles between parents are complementary and protective for children. Erik Erikson was among the first to note that mother-love and father-love are qualitatively different. Mothers are nurturing, expressive, and more unconditional in their love for their children. Father-love, by contrast, often comes with certain expectations of achievement. Subsequent research has consistently revealed that parenting is most effective when it is both highly expressive and highly demanding. This approach to parenting 'provides children with a kind of communion characterized by inclusiveness and connectedness, as well as the drive for independence and individuality [which is] virtually impossible for a man or woman alone to combine effectively'.

Gender differences are also reflected in the way mothers and fathers use touch with their children. Mothers frequently soothe, calm, and comfort with touch. Fathers are more likely to use touch to stimulate or excite their children during play. Mothers tend to engage with children on their level providing opportunities for children to take charge and proceed at their own pace. As fathers engage in rough and tumble play, they take on a teaching role like that of a coach. Roughhousing between fathers and sons is associated with the development of greater self-control in adolescent boys.

rechazan *a priori* el sentido de la maternidad y la paternidad.

En ese contexto, es inaceptable seguir aludiendo o tomar por cierto el estribillo de la discriminación e igualdad para evadir lo que revelan confiables estudios y literatura sobre que un menor necesita idóneamente ambas figuras, madre y padre, para su formación y desarrollo.[5] Cónsono con lo anterior y según analizamos en nuestra Opinión de conformidad, las distinciones son necesarias y *no existe la prerrogativa de tener o poseer un niño como derecho*. En vista de ello, concibo que la institución de la adopción que modelará y será decisiva para el

---

Gender-linked diversity is also observed in parental approaches to discipline. 'The disciplinary approaches of fathers tend toward firmness, relying on rules and principles. The approach of mothers tends toward more responsiveness, involving more bargaining, more adjustment toward the child's mood and context, and is more often based on an intuitive understanding of the child's needs and emotions of the moment'. Consequently, being reared by a mother and a father helps sons and daughters moderate their own gender-linked inclinations. Boys generally embrace reason over emotion, rules over relationships, risk-taking over caution, and standards over compassion. Girls generally place greater emphasis on emotional ties, relationships, caution, and compassion. Over time opposite-sexed parents demonstrate to their children the value of opposing tendencies." (Citas internas omitidas). M. Cretella, MD, FCP, and D. Trumbull, MD, FCP, *Homosexual Parenting: Is It Time For Change?*, American College of Pediatricians, 2012. Disponible en: http://www.acpeds.org/wp-content/uploads/Homosexual-Parenting-is-it-time-for-change.pdf (Última visita el 8 de abril de 2013).

[5] Íd. Véase D. Byrd, *Gender Complementarity and Child-rearing: Where Tradition and Science Agree*, 6 (Núm. 2) J. L. & Fam. 213 (2005), donde se hace la pertinente afirmación siguiente: "[t]here is no fact that has been established by social science literature more convincingly than the following: all variables considered, children are best served when reared in a home with a married mother and father". Disponible en http://narth.com/docs/gendercomplementarity.html (última visita, 8 de abril de 2013). Véanse: B. Schneider, A. Atteberry y A. Owens, *Family Matters: Family Structure and Child Outcomes*, Birmingham, Alabama Policy Institute, 2005, págs. 1-42, disponible en http://www.alabamapolicy.org/wp-content/uploads/API-Research-Current-Family-Structure.pdf (última visita, 8 de abril de 2013); L. Sax, *Why Gender Matters: What Parents and Teachers Need to Know About the Emerging Science of Sex Differences*, Nueva York, Doubleday, 2005; D. Blankenhorn, *Fatherless America*, Nueva York, Basic books, 1995.

desarrollo de los menores, no está exenta de las regulaciones y las distinciones necesarias para imitar la naturaleza de la filiación y así propender hacia el bienestar del menor.

Ahora bien, concurro con que la maternidad y la paternidad son una experiencia humana. Entonces, en la amplitud de esta experiencia, los factores biológicos necesarios para realizarla y el bienestar de la niñez a la luz de todas sus necesidades integrales: ¿por qué debemos soslayar la realidad de que un menor precisará las figuras materna y paterna en su desarrollo? ¿Qué tiene que ver el alegado discrimen por orientación sexual con que afirmemos la realidad natural y demos prioridad a la niñez sobre el deseo adulto? Nada. ¿Se le está despojando a esta pareja de la posibilidad de convivir y llevar a cabo su vida íntima? Contestamos en la negativa.

Los argumentos aducidos en la tardía solicitud de reconsideración no constituyen una razón válida que nos incline a ignorar los hechos irrevocables e innegables de la realidad reproductiva y filial adoptiva. Si ahora el Estado pretende alterar el esquema jurídico para negar esta realidad por encima del bienestar del menor y su derecho a tener madre y padre, tal decisión no le compete a esta rama constitucional. Esto, pues un cambio de esa magnitud sobre la política pública y en los estatutos que reconocen la naturaleza de la familia le corresponden a la Asamblea Legislativa. Precisamente de eso trata el

principio de separación de poderes discutido a cabalidad en la Opinión de la hermana Jueza Asociada señora Pabón Charneco.

En fin, reitero mi conformidad con la Resolución de la mayoría de esta Curia que declara "no ha lugar" a la moción de reconsideración de la peticionaria. En ese aspecto, concibo que "[n]o es que la verdad sea demasiado difícil de hallar, muchas veces está en la superficie [plasmada en la propia naturaleza humana]. Pero es más cómodo y fácil buscar [y adelantar] una idea que concuerde con nuestros deseos, [que son] sobre todo egoístas".[6]

Edgardo Rivera García
Juez Asociado

---

[6] A. Solzhenitsyn, *Peace and Violence* (1973).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

A.A.R., Ex parte

                                        CC-2008-1010

Peticionaria


Voto Disidente emitido por el Juez Presidente señor HERNÁNDEZ DENTON


San Juan, Puerto Rico, a 10 de abril de 2013.

Lamentablemente, por el escaso margen de un voto, este Tribunal desaprovecha la oportunidad de corregir una postura que es contraria al principio de igualdad garantizado en nuestra Constitución. Al denegar la bien fundamentada moción de reconsideración presentada por la parte peticionaria, la decisión de esta Curia contraviene el mejor bienestar de una menor que ha sido amada y protegida por sus dos madres desde antes de su nacimiento. Con profundo pesar, disiento nuevamente.

Reitero que el Art. 138 del Código Civil, 31 L.P.R.A. sec. 539, es inconstitucional al discriminar por razón de sexo. Descartada esta disposición, es evidente que el expediente judicial demuestra que la Sra. A.A.R. cumple con todos los requisitos para

adoptar a quien ha sido su hija *de facto* por más de doce años. Por ello, coincido con lo expuesto por la compañera Juez Asociada señora Rodríguez Rodríguez en que no debemos minimizar el valor del expediente judicial para desviar la atención a argumentos extrajurídicos y morales, como lo ha hecho una mayoría de este Tribunal. Por ende, proveería ha lugar a la moción de reconsideración que nos ocupa y concedería la adopción según solicitada.

De hecho, en su moción, la parte peticionaria señala que una mayoría de este Tribunal erró al razonar que el Art. 138 del Código Civil, *supra*, no discrimina por razón de sexo porque trata por igual a hombres y mujeres. Al respecto, destaca que el Tribunal Supremo federal rechazó este tipo de razonamiento en Loving v. Virginia, 388 U.S. 1 (1967), decisión sin la cual los integrantes de los matrimonios interraciales hoy podrían estar tras las rejas. En ese caso el máximo foro federal expresó lo siguiente:

> the State contends that, because its miscegenation statutes punish equally both the white and the Negro participants in an interracial marriage, these statutes, despite their reliance on racial classifications do not constitute an invidious discrimination based upon race. […] In the case at bar, however, we deal with statutes containing racial classifications, and *the fact of equal application does not immunize the statute from the very heavy burden of justification* which the Fourteenth Amendment has traditionally required of state statutes drawn according to race. Íd., págs. 8-9. (Énfasis en la Moción de Reconsideración).

Al aplicar lo anterior al caso ante nos, la parte peticionaria sostiene correctamente que el hecho de que un estatuto que crea categorías basadas en sexo aplique por igual a hombres y mujeres no es suficiente para sostener su validez constitucional, la cual debe evaluarse mediante el

escrutinio estricto en nuestra jurisdicción. <u>Wackenhut Corp. v. Rodríguez Aponte</u>, 100 D.P.R. 518, 531 (1992); <u>Pérez, Román v. Proc. Esp. Rel. de Fam.</u>, 148 D.P.R. 201, 212-213 (1999).

En mi disenso anterior destaqué que la Opinión mayoritaria aplicó erróneamente el escrutinio mínimo racional a la clasificación inherentemente sospechosa que establece el Art. 138 del Código Civil, *supra.* Así, descansó en el interés que el Procurador General alegó en sus comparecencias iniciales: que la clasificación impugnada pretendía proteger los valores arraigados en la institución de la familia tradicional. Repito que esa alegación generalizada es insuficiente para que el Art. 138 del Código Civil, *supra*, sobreviva el escrutinio estricto. Peor aún, el Estado retiró esa alegación. **Actualmente, la Procuradora General sostiene que el Art. 138 del Código Civil, *supra*, es inconstitucional.**

Luego de certificada la Opinión sobre este caso, que todavía no es final y firme, la Oficina de la Procuradora General compareció ante este Tribunal mediante una moción informativa para puntualizar que el Estado Libre Asociado de Puerto Rico y el Gobierno de Estados Unidos han adoptado como política pública erradicar el discrimen por razón de sexo, orientación sexual y género para atemperar el ordenamiento jurídico a la garantía constitucional de igualdad. *Moción informativa en respuesta a moción de reconsideración y solicitud de autorización y término para presentar postura del Estado en relación a la moción de reconsideración de la parte peticionaria*, págs. 2-3. Como

bien señala la compañera Juez Asociada señora Rodríguez Rodríguez, esta moción debe ser atendida como una para expresarse sobre la moción de reconsideración presentada por la peticionaria y no como una moción de reconsideración independiente. Según la Regla 31 del Reglamento de este Tribunal, la Procuradora General contaba con un término de diez días desde la notificación de la moción de reconsideración presentada por AAR para expresarse. Así lo hizo. Por tal razón, la moción fue presentada oportunamente.

Precisamente, la Procuradora General señala que es posible que el Tribunal Supremo de Estados Unidos evalúe la constitucionalidad de leyes que contienen clasificaciones por orientación sexual en los casos Hollingsworth v. Perry, Núm. 12-144, y United States v. Windsor, Núm. 12-307. Íd. Por ello, nos advierte que la determinación que tome el máximo foro federal en los próximos meses podría afectar directamente el reclamo de la Sra. A.A.R. Íd., pág. 4. Amerita destacar que el Tribunal Supremo federal celebró vistas orales en ambos casos el 26 y 27 de marzo de 2013.

Por otra parte, la Procuradora General afirma que el Art. 138 del Código Civil, *supra*, es inconstitucional porque discrimina por razón de orientación sexual y no sobrevive el escrutinio estricto. Íd., pág. 5. Por eso, se unió a la moción de reconsideración presentada por la peticionaria. Íd.

Sin embargo, cinco de los nueve jueces de esta Curia dejan a un lado la realidad de que el propio Estado mediante la Procuradora General apoya la adopción

solicitada y de que, en unos meses, el Tribunal Supremo federal podría resolver en los méritos dos casos que impactarían la decisión cuya reconsideración se solicita. Asimismo, además de rehusarse a reconocer que el Art. 138 del Código Civil, *supra*, es inconstitucional porque discrimina por razón de sexo, la mayoría no da adecuada importancia y reconocimiento a la amalgama de fundamentos jurídicos **adicionales** que sostienen su inconstitucionalidad. Veamos unos cuantos, sin ánimo de ser exhaustivos.

Primero, este Tribunal pudo haber declarado inconstitucional el Art. 138 del Código Civil, supra, por este discriminar por razón de nacimiento contra JMAV. Segundo, este Tribunal pudo haber declarado inconstitucional el referido Artículo por este infringir el derecho de CVV y AAR a tener hijos, criarlos y educarlos, proveniente del derecho a la intimidad garantizado expresamente en nuestra Constitución y el cual es de factura más ancha que su homólogo federal. Tercero, la inconstitucionalidad del Artículo en cuestión pudo haberse fundamentado reconociendo que la orientación sexual es una característica inmutable del ser humano, fundamental para su identidad. Cuarto, este Tribunal pudo haber decretado su inconstitucionalidad incluso mediante el escrutinio racional, pues la clasificación impugnada es arbitraria y caprichosa. Quinto, **este Tribunal tenía la obligación de declarar inconstitucional el Art. 138 del Código Civil,** *supra*, **por este violar la dignidad de AAR, CVV y JMAV, al**

**tratarlas como ciudadanas de segunda clase por ser parte de una familia encabezada por dos mujeres.**

Es harto sabido que Puerto Rico no puede reconocer menos derechos constitucionales que los reconocidos a nivel federal. Pueblo v. Yip Berríos, 142 D.P.R. 386, 397-398 (1997); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250, 258-259 (1978). Si la Opinión emitida el 20 de febrero de 2013 adviene final y firme y el máximo foro federal invalida las clasificaciones por orientación sexual, ¿obligaremos a la parte peticionaria a sufrir y costear un nuevo procedimiento judicial idéntico al que ha sufrido y costeado desde el 7 de junio de 2005? Apéndice, pág. 77. ¿Por qué no podemos esperar unos meses para disponer de un caso que lleva ante esta Curia desde el 13 de noviembre de 2008?

Lo peor es que, fuera del escenario judicial, este Tribunal deja desprotegida a una menor que seguirá viviendo con sus dos madres, independientemente del juicio moral que cinco de los nueve jueces de esta Curia indirecta o directamente hace de su familia. Los tres seres humanos que comparecieron ante este Tribunal en búsqueda del remedio que les garantiza nuestra Constitución merecen, como mínimo, sensibilidad, respeto y consideración de parte de cada uno de los integrantes de esta Curia.

A la luz de lo expuesto anteriormente, la prudencia aconseja que este Tribunal posponga la consideración de la moción de reconsideración presentada por la parte peticionaria. No obstante, como una mayoría de este Tribunal ha decidido denegar la misma, disiento del curso

de acción propuesto y reitero los criterios expuestos en mi Opinión disidente del 20 de febrero de 2013.


                                    Federico Hernández Denton
                                         Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

A.A.R.

     Peticionaria

*Ex Parte*

CC-2008-1010

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 10 de abril de 2013.

> "On the other hand, there is an immediate legal injury or legal —what could be a legal injury, and that's the voice of these children. There are some 40,000 children in California, according to the Red Brief, that live with same-sex parents, and they want their parents to have full recognition and full status. The voice of those children is important in this case, don't you think?"[7]

Ante la moción de reconsideración presentada por la peticionaria, reafirmo mi postura desde la disidencia ante la denegatoria de una mayoría del Tribunal de reconocerle jurídicamente a AAR su relación de amor y afecto maternal hacia su hija JMAV. Aun así, aprovecho estas páginas para hacer otras expresiones, pues los folios de nuestros

---

[7] *Hollingsworth v. Perry*, Docket No. 12-144 (Anthony M. Kennedy, J., Vista Oral), http://www.supremecourt.gov/oral_arguments/argument_transcripts/12-144.pdf.

escritos jamás serán suficientes para denunciar el proceder errado de esta Curia ni la injusticia que aquí se comete.

En el caso de autos todos los jueces y juezas de este Tribunal nos referimos a la peticionaria y a su familia mediante las iniciales de sus nombres por motivos de proteger la identidad de ellas y la confidencialidad de los procesos. Sin embargo, detrás de esas iniciales hay sujetos, hay seres humanos que sufren y padecen los resultados de nuestras decisiones. A pesar de que este Tribunal tuvo ante sí múltiples y variados enfoques o mecanismos hábiles en Derecho para facultar la adopción solicitada,[8] la mayoría del Foro enfocó su atención en argumentos jurídicos y morales que abstrajeron la subjetividad y humanismo de las personas a quienes iba dirigida nuestra decisión. Esto, a su vez, contraviniendo

---

[8] De la variedad de herramientas jurídicas para atender esta controversia, la disidencia proveyó tres mecanismos o teorías separadas que también fueron ignoradas por la mayoría del Tribunal. *Véase A.A.R. Ex Parte*, 2013 T.S.P.R. 16 (Opinión disidente del Juez Presidente señor Hernández Denton (aplicación de un escrutinio estricto para decretar la inconstitucionalidad del Artículo 138 del Código Civil de Puerto Rico)); (Opinión disidente de la Jueza Asociada señora Fiol Matta (aplicación de la figura del *second parent adoption*)); (Opinión disidente de la Juez Asociada señora Rodríguez Rodríguez (incorporación de la figura del *second parent adoption* y, en la alternativa, la aplicación de un escrutinio intermedio para decretar la inconstitucionalidad del Artículo 138 del Código Civil)); (Opinión disidente del Juez Asociado señor Estrella Martínez (aplicación de la figura del *second parent adoption*)).

Véanse además los distintos fundamentos jurídicos para facultar la adopción, provistos por el Juez Presidente señor Hernández Denton en su Voto Disidente sobre la denegatoria de la mayoría del Tribunal a reconsiderar su decisión en *A.A.R. Ex Parte*, 2013 T.S.P.R. 16.

el mejor interés de la menor JMAV que quedó evidenciado en el propio expediente, mas no mediante informes o estudios ajenos al expediente mismo.

Si bien es cierto que nuestros pronunciamientos deben "[explicitar] los fundamentos jurídicos" de las decisiones emitidas,[9] igual de cierto es que nuestra función como último foro de justicia en el País no debe ejercerse en aislamiento de las personas que confían sus esperanzas en el expediente judicial con que trabajamos. Por ello, no debemos soslayar que "[e]l expediente judicial es una permanente conexión humana. E ingresa en la historia de la persona, porque ésta es su protagonista". Néstor Amílcar Cipriano, *La humanidad del expediente judicial y otros ensayos jurídicos* 26-27 (1976).

El expediente judicial de un caso ante nuestra consideración es la herramienta base de nuestra función adjudicadora, pero las personas cuyos problemas están depositados en él son el motor impulsor de nuestra gestión judicial. En palabras de Néstor Amílcar Cipriano, debemos ser conscientes de que:

> El expediente judicial vive pleno de humanidad. Inquietudes, ansiedades, esperanzas laten sin cesar en cada una de sus hojas. Es el trámite cierto hacia una decisión. Una persona, una familia, un grupo pueden estar pendientes del desarrollo, que conduce a un resultado. Momentos tensionales dominan los ánimos de quienes esperan. Naturalmente, mucho dependerá de la importancia del problema juzgado. Pero, por

___

[9] Érika Fontánez Torres, *Antesala: observando a los jueces y juezas como operadores del Derecho*, 80 Rev. Jur. U.P.R. 1, 3 (2011).

mínimo que fuere, nunca se ausentarán las humanas inquietudes.

La carátula, el nombre, el número catalogador, la clase de asunto, los escritos, las decisiones parciales, la sentencia final, son imanes dominantes de la conformación vivencial.

....

El expediente judicial es el *corpus* que recibe ansiedades, esperanzas, inquietudes. Su conformación física —que alguna vez puede aparentar frialdades— no anula ni desvanece su verdadero contenido. Al contrario, vive rezumante de humanidad, con la esencia puesta en la meta de la justicia.

Amílcar Cipriano, *supra*, págs. 19, 27.

El valor del expediente judicial de un caso no debe minimizarse; mucho menos debe desviarse la atención hacia propósitos exógenos que no disponen de la controversia, como los argumentos extrajurídicos y morales de la mayoría de este Foro en esta controversia. Frente al expediente judicial el juez debe conservar la humildad, poseer virtud, no juzgar con arbitrariedad, ser compasivo, proteger la dignidad humana y buscar la verdad y la equidad más allá de las concepciones morales y subjetivas que pueda tener. Miguel de Cervantes, *Don Quijote de la Mancha* II, Cap. XLII, págs. 868-870 (Ed. del IV Centenario, Real Academia Española 2004) (1615); Jaime B. Fuster Berlingeri, *La solidaridad en el proceso judicial*, 41 Rev. Der. P.R. 1 (2002).[10] Ante todo, el juez debe ser consciente de las

---

[10] Citamos del escrito del Juez Asociado señor Fuster Berlingeri:

El juez ha de ser sensible particularmente a la necesidad de conjurar los discrímenes que históricamente han sufrido las minorías, los

peripecias que cargan las personas dentro de un expediente y debe vivirse el caso.  Amílcar Cipriano, *supra*, pág. 26. En ocasiones, según reflejado en este caso por medio de la mayoría del Tribunal, a los jueces se les olvida esto último y se presentan con una actitud flemática e impasible ante la humanización del expediente.

Además de lo anterior, coincido con las expresiones del Juez Presidente señor Hernández Denton en su Voto Disidente en cuanto a que debemos ser prudentes en este caso y posponer la resolución de la moción de reconsideración hasta tanto el Tribunal Supremo de Estados Unidos resuelva los casos *United States v. Windsor*, Docket No. 12-307, y *Hollingsworth v. Perry*, Docket No. 12-144. No hay duda que nuestra opinión se da a destiempo ante la inminencia de unos dictámenes "que podrían alterar muy pronto el escenario constitucional y que, dependiendo del resultado, podrían requerir que el Tribunal Supremo de Puerto Rico tenga que revisar este asunto".  Hiram Meléndez Juarbe, "Ex Parte AAR y el TSEU"*,* en *derechoalderecho*, http://derechoalderecho.org/2013/03/27/ex-parte-aar-y-el-tseu/ (última visita 10 de abril de 2013).  Es ante ese

---

trabajadores, los encarcelados, los acusados, las mujeres, los indigentes, los emigrantes y otros desfavorecidos y desamparados. Ha de estar consciente de que el reto mayor de la justicia es el de **proteger la dignidad humana** y procurar el desarrollo pleno precisamente de aquéllos que más lo necesitan, de los desvalidos, y de **aquéllos que han sufrido cualquier forma de opresión o injusticia**.

Jaime B. Fuster Berlingeri, *La solidaridad en el proceso judicial*, 41 Rev. Der. PR 1, 17 (2002) (énfasis suplido).

trasfondo que la Procuradora General en su moción en respuesta a la moción de reconsideración presentada por AAR, señala que el máximo foro federal tiene ante sí asuntos donde está en controversia el escrutinio aplicable a estatutos que contienen clasificaciones por orientación sexual en su aplicación a parejas del mismo sexo, tal cual el caso ante nuestra consideración. Oficina de la Procuradora General, *Moción Informativa en Respuesta a Moción de Reconsideración y Solicitud de Autorización y Término para Presentar Postura del Estado en Relación a la Moción de Reconsideración de la Parte Peticionaria*, 18 de marzo de 2013, pág. 3.[11]

En la moción mencionada, el Estado libre Asociado de Puerto Rico, por representación de la Oficina de la Procuradora General, nos indica que en su comparecencia mediante alegato en octubre de 2009 "reconoció que el Artículo 138 **contiene una clasificación por preferencia sexual**". *Id.* pág. 1 (énfasis en el original). Sin embargo, en aquella ocasión el Estado invocó las reglas de autolimitación judicial para no profundizar en el tema, además que descansó en señalar que no se configura un discrimen por razón de sexo, género u orientación sexual porque la prohibición del Artículo 138 del Código Civil, 31

---

[11] Con la posposición de la resolución de la moción de reconsideración ante nosotros hasta tanto el Tribunal Supremo de Estados Unidos resuelva dos casos ante sí que ineludiblemente incidirán sobre nuestro pronunciamiento en el caso de autos, precisamente se busca paralizar procesalmente el efecto de una decisión con tal de reducir el espectro de especulación que gravita a su alrededor.

L.P.R.A. sec. 539, le aplica por igual a familias compuestas por dos hombres como por dos mujeres. *Alegato de la Procuradora General*, 30 de octubre de 2009, pág. 25.

Tras transcurrir poco más de tres años desde aquella comparecencia, la Oficina de la Procuradora General ahora señala correctamente que "el panorama del derecho constitucional a nivel federal sobre discrimen por orientación sexual ha cambiado y ello amerita revaluar los planteamientos de este caso". Procuradora General, *Moción Informativa en Respuesta a Moción de Reconsideración*, pág. 2. Es precisamente basado en los cambios que ha sufrido el derecho constitucional a la igual protección de las leyes y la protección contra el discrimen por razón de orientación sexual, que la Procuradora General ahora nos solicita que le concedamos un término para presentar de forma más extensiva un alegato o comparecencia suplementaria para expresarse sobre el análisis constitucional aplicable a clasificaciones basadas en orientación sexual.

En la Resolución que hoy emite este Tribunal se rechaza la solicitud de la Oficina de la Procuradora General bajo el supuesto de falta de jurisdicción porque el escrito se presentó fuera del término de diez días laborables que provee la Regla 45 del Reglamento del Tribunal Supremo. La Regla 45 de nuestro Reglamento (sobre mociones de reconsideración) establece un término jurisdiccional de diez días para presentar una moción de reconsideración y, además, señala que se "denegará de plano

cualquier solicitud de prórroga para presentar una moción de reconsideración o un escrito en apoyo de ésta". Yerra la mayoría de este Foro al rechazar la petición, puesto que el escrito de la Procuradora General no es una moción de reconsideración ni solicita una prórroga para presentar moción en apoyo a una moción de reconsideración. Su escrito, aunque manifiesta su apoyo a la moción de reconsideración presentada por AAR, versa sobre la solicitud de un término para presentar suplementariamente la postura del Estado en torno al escrutinio aplicable en controversias de discrimen por razón de orientación sexual.

La petición de la Procuradora General debe catalogarse como una moción para expresarse a favor o en contra de una moción para algún remedio, por lo que tenía un término de presentación de diez días desde la notificación de la moción de reconsideración presentada por AAR. *Véase* Reglamento del Tribunal Supremo, R. 31. Debido a que la moción de la Procuradora General se presentó dentro de los diez días de presentada la moción de reconsideración de AAR, conservamos jurisdicción sobre tal escrito.

En la alternativa de aplicar la mencionada Regla 31, la moción de la Procuradora General debe considerarse como una comparecencia especial o *sui generis* (única en su clase) para lo que el Reglamento del Tribunal no tiene previsto un término o procedimiento particular. En tal circunstancia, por vía de la Regla 50 nuestro Reglamento faculta a encauzar el trámite de lo solicitado según "los

mejores intereses de todas las partes ... para así lograr el más justo y eficiente despacho del caso o del asunto de que se trate". Reglamento del Tribunal Supremo, R. 50. Salvo quien se persigne ante una justicia tuca, lo más justo y razonable para atender la comparecencia de la Procuradora General llevaría a un juez a facultar lo solicitado.

Más aún, cuando quien acude es el Estado Libre Asociado de Puerto Rico para expresarse en torno a un asunto de alto interés público, no debemos tomar a la ligera ni superfluamente su comparecencia. Así como la mayoría del Tribunal le dio un peso significativo a la comparecencia del año 2009 de la Procuradora General para definir el interés legítimo del Artículo 138 del Código Civil de no permitir que una persona adopte al hijo de su pareja del mismo sexo, cuando la propia Ley Núm. 8 de 19 de enero de 1995 no lo definía, así también esa mayoría debe darle el mismo trato sin distinción del tiempo transcurrido ni la política pública actual de erradicación del discrimen contra un ser humano en cualquiera de sus modalidades.[12] *Véase* Procuradora General, *Moción Informativa en Respuesta a Moción de Reconsideración*, pág. 2 (donde se aborda sobre la política pública actual del Estado en materia de discrímenes y su interés en atemperar el ordenamiento

---

[12] No se justifica cuestionar la actuación o motivaciones de la Procuradora General y atribuirle a ésta que su proceder no es más que un mero "artificio" que persigue "otros propósitos", sin identificar de qué propósitos se habla.

jurídico al mandato de igualdad dispuesto en nuestra Constitución).

Previo a concluir, conviene puntualizar que el cambio de política pública que señala la Procuradora General en su escrito no constituye "una desviación de su deber de defender la constitucionalidad del Artículo 138 del Código Civil". La Sección 4 del Artículo IV de la Constitución de Puerto Rico impone a la Rama Ejecutiva la función de cumplir y hacer cumplir las leyes, mas no el deber de defender la constitucionalidad de éstas ante los tribunales.[13] Por eso nada impide que esa rama de gobierno desista de defender la constitucionalidad de una ley cuando, en su prerrogativa de interpretar la Constitución, concluye que la ley en cuestión es inconstitucional.[14] En

---

[13] La Regla 21.3 de las de Procedimiento Civil faculta al Estado Libre Asociado de Puerto Rico a intervenir en un pleito en que se cuestione la constitucionalidad de una ley. No obstante, su intervención no es obligatoria, salvo que el tribunal lo ordene. Además, la regla no le impone al Estado ningún deber ministerial de defender la constitucionalidad de la ley impugnada. 32 L.P.R.A. Ap. V, R. 21.3.

[14] Ese mismo proceder asumió el Presidente de Estados Unidos y el Departamento de Justica federal, por voz de su Secretario Eric J. Holder, al remitirle una carta a John A. Boehner, *Speaker* de la Cámara de Representantes de Estados Unidos, en donde se informó que la Rama Ejecutiva federal desistiría de defender la constitucionalidad de la Sección 3 del *Defense of Marriage Act* (DOMA) ante los tribunales. Eric J. Holder, *Letter from the Attorney General to Congress on Litigation Involving the Defense of Marriage Act*, disponible en http://www.justice.gov/opa/pr/2011/February/11-ag-223.html ("'[D]ifferent cases can raise very different issues with respect to statutes of doubtful constitutional validity', and thus there are 'a variety of factors that bear on whether the Department will defend the constitutionality of a statute'.... This is the rare case where the proper

vista de que la tarea de un funcionario en el cargo de Procuradora General es defender la Constitución antes que una ley inferior que esté en contravención de la primera, y de que la determinación de validez constitucional del Artículo 138 de este Foro aún no es final y firme, la Oficina de la Procuradora General no se desvía en ejercer la función a la que juró: de defender nuestra Carta Magna contra cualquier ley que promueva el discrimen, atente contra la dignidad humana y los demás derechos allí consagrados.

Además, reconocer que un dictamen de un tribunal es erróneo, aunque ello sea en un caso en que inicialmente se ha prevalecido, es cónsono con la responsabilidad de esa Oficina para con este Tribunal. Sobre esta práctica de parte de la Oficina del Procurador General, el profesor Archibald Cox, Procurador General de Estados Unidos (1961-1965), señala lo siguiente:

> It tests the strength of our belief that the office has a peculiar responsibility to the Court. It affects the way all our other cases are presented. If we are willing to take a somewhat disinterested and wholly candid position even when it means surrendering a victory, then all our other cases will be presented with a greater degree of restraint, with a greater degree of candor, and with a longer view, perhaps, than otherwise.

Citado en Lincoln Caplan, *The Tenth Justice: The Solicitor General and the Rule of Law*, pág. 10 (1987).

---

course is to forgo the defense of this statute. Moreover, the Department has declined to defend a statute 'in cases in which it is manifest that the President has concluded that the statute is unconstitutional', as is the case here").

Y es que, quienes hemos ceñido ese sombrero sabemos "que[,] habida cuenta de la confianza que el pueblo deposita en los funcionarios encargados de velar por que se cumplan las leyes, [nosotros] tenemos una obligación moral de actuar afirmativamente cuando lo contrario conllevaría un extravío de la justicia". A. Rodríguez Rodríguez, *Abogando ante el Tribunal Supremo: deberes y obligaciones de la Oficina del Procurador General*, 62 Rev. Jur. U.P.R. 87, 94-95 (1993). El Estado Libre Asociado de Puerto Rico gana en cada ocasión en que se les hace justicia a sus ciudadanos en los tribunales y se les protege y defiende del discrimen. No podría ser de otra forma.

En atención a lo antes mencionado, pospondría la consideración de la moción de reconsideración presentada por AAR. En vista de que la mayoría no toma ese curso de acción, disiento nuevamente del proceder mayoritario y reafirmo mis expresiones anteriores en *A.R.R. Ex Parte*, 2013 T.S.P.R. 16 (Rodríguez Rodríguez, J., Op. Disidente).

Anabelle Rodríguez Rodríguez
Juez Asociada